999 So.2d 1223 (2009)
Angela FLETCHER, Plaintiff-Appellant
v.
WENDELTA, INC., Denard Wilson, Don Sapp, Defendants-Appellees.
No. 43,866-CA.
Court of Appeal of Louisiana, Second Circuit.
January 14, 2009.
*1226 Raymond Lee Cannon, Tallulah, for Appellant.
Adams and Reese, LLP, by Laurie Briggs Young, Michelle D. Craig, New Orleans, for Appellee.
Before BROWN, CARAWAY and DREW, JJ.
CARAWAY, J.
In this wrongful termination of employment case which includes claims of employment discrimination and outrageous conduct against the owner-corporation and employees of a fast food restaurant during plaintiff's two days of employment, the trial court dismissed plaintiff's claims by summary judgment. Plaintiff appeals urging that outstanding discovery requests remain unsatisfied and that issues of material fact exist. For the following reasons, we affirm.

Facts
Angela Fletcher initially began employment with Wendelta, Inc., ("Wendelta") at a Wendy's restaurant in Tallulah, Louisiana, on November 28, 2000. On January 24, 2004, however, Fletcher was terminated from employment because it was believed that she had violated the company's cash policies and procedures. Based upon Wendelta's policy, Fletcher was placed on "no rehire" status. During this time of her employment by Wendelta, Fletcher was supervised by Denard Wilson.
On May 30, 2005, Stephanie Silas, a manager at the Tallulah restaurant, contacted Fletcher about returning to work for Wendy's. In response, Fletcher quit her employment and returned to work for Wendelta for two days, June 9 and June 10, 2005 (hereinafter the "Two-Day Employment"). Thereafter, she was formally terminated for abandoning her job after missing consecutive shifts. Fletcher claims that after June 10 at some unspecified point in time she was told by Silas that she should not continue to report to work because District Manager, Don Sapp, had informed her to take Fletcher's name off of the schedule. She did not specifically dispute Wendelta's contention that she failed to report as scheduled on June 11.
On April 11, 2007, Fletcher instituted this suit for damages for wrongful termination of her employment and intentional infliction of emotional distress arising from both terms of her employment with Wendelta, namely, her 2000-2004 employment and the Two-Day Employment.[1] Specifically, Fletcher alleged as follows in relevant part:
4.
Petitioner shows that the conduct of the defendant, Wendelta, Inc., Denard Wilson and Don Sapp, in subjecting petitioner, to an environment of unconsented sexual harassment and retaliation was extreme and outrageous conduct and violated petitioner's right to be free from such conduct as guaranteed by Art. 2315 of the La. C.C.
5.
Petitioner further shows that the termination of her employment by Wendelta, Inc., was wrongful and in violation of petitioner's right to be free of unreasonable and outrageous conduct by an employer as well as in violation of Wendy's *1227 personnel policy of zero tolerance for sexual discrimination.
Because Fletcher's state court petition also included claims of sexual discrimination in violation of Title VII of the Civil Rights Act, the case was removed to federal court. On May 24, 2007, defendants filed a motion in federal court to dismiss Fletcher's claims. Upon recommendation of the federal magistrate, a judgment granting the motion to dismiss in part and denying it in part was signed on August 6, 2007, by the district court for the Western District of Louisiana. Specifically, the judgment dismissed with prejudice, as untimely, all Title VII claims relating to both terms of employment. Fletcher's state law discrimination claims relating to her initial term of employment with Wendelta through 2004 were also dismissed as untimely. The federal court denied defendant's motion to dismiss the state law discrimination claims arising out of Fletcher's Two-Day Employment with Wendelta in 2005 and remanded the suit to the Sixth Judicial District Court for resolution of that remaining claim.
On September 24, 2007, Wilson filed an exception of no cause and/or right of action based upon the lack of allegations in Fletcher's petition that Wilson had any involvement with Fletcher during her brief Two-Day Employment. The trial court granted Wilson's exception but allowed Fletcher to amend her petition to state a cause of action against Wilson. Fletcher filed her First Amended Petition on January 4, 2008, making allegations which, for the most part, continued to assert charges of sexual harassment against Wilson. Those charges concerning Fletcher's 2000-2004 employment have been adjudicated in the federal court. The amended petition did make the following assertion arguably related to Fletcher's Two-Day Employment in 2005:
Upon reasonable information and belief, Defendant, Denard Wilson, after Petitioner's first term of employment with Defendant, Wendy's continued to influence Wendy's employees to deny Petitioner's employment at Wendy's since Petitioner had rejected his unwanted sexual advances when she was employed at Defendant, Wendy's.
Prior to the court's ruling on Wilson's exception, Wendelta and Sapp filed a motion for Summary Judgment on December 7, 2007. The defendants argued that Fletcher would not be able to establish that she was wrongfully terminated based upon discrimination or succeed in proving intentional infliction of emotional distress. The only affidavit submitted by defendants in support of summary judgment was that of Sapp, the district manager of the Wendy's restaurant, who stated in relevant part as follows:
2. I make the hiring and firing decisions in these stores, and I made the decision regarding the termination of Angela Fletcher in June of 2005.
* * *
5. In May of 2005, the co-manager of ou[r] Tallulah restaurant, Stephanie Silas, contacted Ms. Fletcher about returning to work for the company.
6. Ms. Silas did not verify Ms. Fletcher's rehire status with the corporate officer, which is our standard procedure.
7. Ms. Fletcher began working on June 9, 2005 as a crew member in Store Number 219.
8. Ms. Fletcher worked two days: June 9th and June 10th.
9. Shortly after Ms. Fletcher was rehired, I learned that Ms. Fletcher was put on a "no rehire" status after she was terminated from her first employment with Wendy's.

*1228 10. Once I learned that Ms. Fletcher was working at one of our restaurants, but was ineligible for rehire, I decided to terminate her employment with the company in keeping with ou[r] company policy.
11. Although she was on the schedule to work on the following days, she did not show up for work after June 10, 2005.
12. Missing consecutive shifts is a violation of the attendance policy.
13. Ms. Fletcher missed consecutive shifts. Therefore, she was considered to have abandoned her job. Abandoning the job is also grounds for termination.
14. Ms. Fletcher was officially terminated again on June 12, 2005.
15. I terminated her for abandoning her job. However, she also would not have been able to maintain her employment with Wendy's had she shown up at work due to her no-rehire status.
The defendants argued that because they had established uncontroverted nondiscriminatory reasons for firing an at-will employee, Fletcher would not be able to succeed in her burden of establishing wrongful termination for discriminatory reasons. Further, because her claim for intentional infliction of emotional distress could not be separated from her termination of employment, defendants argued that no claim for intentional infliction of emotional distress of an at-will employee is available as a matter of law. Finally, defendants argued that Fletcher could not establish that their actions in terminating her employment were extreme and outrageous.
On February 19, 2008, Wilson filed a second exception of no cause and/or right of action accompanied with a motion for summary judgment. He adopted the factual grounds of Wendelta and Sapp which were presented in support of their motion for summary judgment as contained in Sapp's affidavit. Wilson argued that summary judgment was appropriate because plaintiff would not be able to meet her burden of showing that the stated reasons for her firing were pretextual. Further, Wilson argued that because Don Sapp had terminated Fletcher for abandonment of her job and because of her no-rehire status, Fletcher would not be able to sustain her burden of showing that she was terminated for discriminatory reasons.
Fletcher opposed the summary judgment on the grounds that genuine issues of material facts existed regarding whether her firing in violation of stated company policies constituted extreme and outrageous conduct. She also argued that defendant's failure to provide the personnel files of Sapp, Silas and Wilson through discovery precluded the granting of summary judgment in favor of defendants.
In support of her opposition, Fletcher attached her affidavit and that of her mother. In relevant part, Fletcher's affidavit stated the following:
3) Affiant did not report to work after June 10, 2005 because Stephanie Silas, a Wendy's Manager, told Affiant not to report to work because Don Sapp, Wendy's Manager told Stephanie Silas to take Affiant's name off of the work schedule.
4) Since June 10, 2005, Affiant has been unable to get and hold a job.
5) Affiant has suffered and continues to suffer stress and worry about her ability to get a job and to move on with her life after the conduct and treatment which she has received by the Defendants as shown in this lawsuit which is captioned above.
In addition to the above-noted arguments, defendants contended at the hearing before the trial court that Fletcher would not be able to prove any discrimination claim because she could not succeed in *1229 her burden of showing that the racially neutral reasons for her firing were pretextual. Further, defendants argued that Fletcher had no claim against Wilson for his alleged continuing discriminatory influence over employees because Sapp took full responsibility for firing and Fletcher had not refuted that fact. Defendants also argued that the discovery of Wilson's and Silas's personnel files were irrelevant to Fletcher's claims. Fletcher argued that the personnel files of Wilson would have raised issues of material fact relating to his credibility.
After considering the arguments of counsel and the memoranda and attachments filed by the parties, the trial court granted all of the defendants' summary judgments, thereby dismissing the suit. Fletcher has appealed the April 22, 2008 judgment. She reiterates her argument that summary judgment was improper due to outstanding discovery requests and that genuine issues of material fact remain.

Discussion
On the motion for summary judgment, the burden of proof is on the mover. La. C.C.P. art. 966. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then the mover may merely point out to the court the absence of factual support for one or more elements essential to plaintiff's claim. The burden then shifts to the plaintiff to present evidence demonstrating that genuine issues of material facts remain. La. C.C.P. art. 966(C)(2); Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Holloway v. Kansas City S. Ry. Co., 43,318, 43,319 (La.App. 2d Cir.8/13/08), 988 So.2d 854; Wells v. Red River Parish Police Jury, 39,445 (La.App.2d Cir.3/2/05), 895 So.2d 676. If the plaintiff fails to meet this burden, there is no genuine issue of material fact and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Power Marketing Direct, Inc. v. Foster, 05-2023 (La.9/6/06), 938 So.2d 662. Appellate review of the grant or denial of summary judgment is de novo. Wells v. Red River Parish Police Jury, supra.
The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will. Quebedeaux v. Dow Chemical Co., 01-2297 (La.6/21/02), 820 So.2d 542. The doctrine of employment-at-will is merely a gap filler, a judicially created presumption utilized when parties to an employment contract are silent as to duration. Id. The rule is set forth in La. C.C. art. 2747 which provides as follows:
A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
Under La. C.C. art. 2747, generally, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge. Quebedeaux, supra. However, that right is tempered by numerous federal and state laws which proscribe certain reasons for dismissal of an at-will employee, such as race, sex, or religious beliefs. In Louisiana, La. R.S. 23:332 prohibits intentional discrimination in terms or conditions of employment based on race, color, creed, religion, sex or national origin.
To establish a prima facie case for sexual harassment in a hostile work environment, the employee must prove by a preponderance of the evidence that: (1) she belonged to a protected group; (2) she *1230 was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Whittington v. Kelly, 40,386 (La.App. 2d Cir. 12/14/05), 917 So.2d 688. Likewise to establish a prima facie case for retaliation, the plaintiff must prove by a preponderance of the evidence that: (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. Hanley v. Doctors Hospital of Shreveport, 35,527 (La.App. 2d Cir.6/6/02), 821 So.2d 508. Once the plaintiff establishes a prima facie case, the burden of production shifts to defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. Id. If the defendant introduces evidence which, if true, would permit the conclusion that the adverse action was nondiscriminatory, the employee assumes the burden of proving that the reasons given were a pretext for retaliation. The plaintiff must show that "but for" the protected activity, the termination would not have occurred. Id.
Aside from these exceptions, there are no broad policy considerations creating exceptions to employment-at-will and affecting relations between employer and employee. Quebedeaux, supra; Jackson v. Mayo, 42,970 (La.App. 2d Cir.2/13/08), 975 So.2d 815, writ denied, 08-0553 (La.4/25/08), 978 So.2d 371. As long as the termination does not violate any statutory or constitutional provisions, it is without liability to the employer. Jackson v. Mayo, supra. In fact, there need be no reason at all for the termination. Id. The at-will doctrine provides a shield to employers so significant that only a few instances provide exception to the protection. Id.
The basis for the tort of intentional infliction of emotional distress in Louisiana is La. C.C. art. 2315. Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017. In order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. Id.
It is not enough that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim, "Outrageous." Nicholas v. Allstate Ins. Co., 765 So.2d at 1022.
Louisiana recognizes a cause of action for intentional infliction of emotional distress in a workplace setting. This state's jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time. Id. The distress suffered by the employee must be more than a reasonable person could be expected to endure. Moreover, the employer's conduct must be intended or calculated to *1231 cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry. Id.
Turning first to Fletcher's claims against Wilson, the record reflects that Wilson's only involvement with Fletcher occurred during the time of her earlier four-year employment. The charges of sexual harassment against him were dismissed by the federal court. The new allegation that he "continued to influence Wendy's employees" concerning her Two-Day Employment in 2005 is refuted by Sapp's affidavit which asserts that only he and Silas were involved in the employment decisions for Fletcher in 2005. Sapp also indicated that the reasons for the hiring and firing were not related to Wilson or to Fletcher's allegations against Wilson. In fact, the initial formal expressions of Fletcher's charges of sexual harassment against Wilson did not arise until the filing of charges before the Louisiana Commission on Human Rights in November 2005. Therefore, based upon the tenuous nature of the allegations of Wilson's involvement with Fletcher's Two-Day Employment in 2005, Sapp's affidavit, and the lack of any opposition to the motion for summary judgment revealing any actions by Wilson in 2005, the summary judgment in favor of Wilson is affirmed.
Fletcher's claims of discrimination and extreme and outrageous conduct against Wendelta and Sapp are limited to her Two-Day Employment, despite certain argument and factual assertions on her part which are clearly tied to her earlier employment. At trial, the burden of proof for both claims would rest with Fletcher. Thus, on the summary judgment, the defendants were required to point out the absence of factual support for one or more elements essential to Fletcher's claims.
Regarding the claim of discrimination, Fletcher makes no assertion that her race played a part in the events surrounding her dismissal following her Two-Day Employment. Again, her assertions and argument appear tied vaguely to the allegations of Wilson's prior sexual harassment as a discrimination claim based upon sex. Nevertheless, there is no factual assertion or evidence that in June 2005, Sapp or Silas knew of Fletcher's assertions that she had been sexually harassed by Wilson during her earlier employment. Therefore, she has presented no factual support in opposition to the motion for summary judgment revealing how her sex was involved in the decision to terminate her from her Two-Day Employment.
Finally, there are no other factual assertions or evidence produced by Fletcher in opposition to the motion for summary judgment which demonstrated any extreme or outrageous conduct on the part of Sapp and Silas for their roles in her Two-Day Employment. It is undisputed that Fletcher was an at-will employee. Her dismissal under the circumstances explained by Sapp appear entirely reasonable, and Fletcher offered no evidence demonstrating how she would begin to prove the tort of intentional infliction of emotional distress.
Concerning Fletcher's discovery claim, there is no absolute right to delay an action on a motion for summary judgment until discovery is completed. The fact that discovery is incomplete does not procedurally bar the defendant from seeking a summary judgment. The trial court has the discretion to either issue a summary judgment or order more discovery. Simoneaux v. E.I. du Pont de Nemours and Co., 483 So.2d 908 (La.1986); Lacure v. Brookshire's Stores, 38,627 (La. App.2d Cir.6/23/04), 877 So.2d 264. The only requirement is that the person be given a fair opportunity to present her claims and unless a plaintiff shows a probable injustice, a suit should not be delayed *1232 pending discovery when it appears at an early stage that there is no genuine issue of material fact. Id.
This suit had proceeded in the state and federal courts for a year and a half prior to the filing of the defendants' motion for summary judgment. Fletcher claims entitlement to the personnel files of Silas and Wilson which defendants admit they declined to provide to her. There was no motion to compel discovery by Fletcher in the proceedings. In this matter, the trial court granted summary judgment despite the discovery claim. Fletcher has not established that a probable injustice would result unless information contained in the files was made available to her. Thus, we find no abuse of discretion in the trial court's determination that summary judgment in favor of defendants was appropriate.

Conclusion
The judgment of the trial court is affirmed. Costs of this appeal are assessed against Fletcher.
AFFIRMED.
NOTES
[1] Fletcher's initial suit, filed in state court on June 6, 2006, and amended on October 31, 2006, was dismissed on March 6, 2007.