HIGGINBOTHAM, J.
|2In this reverse-race discrimination case, plaintiff appeals the trial court’s judgment dismissing his federal and state law claims of discrimination, harassment, and retaliation in the workplace. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Gary Burnett, a white male, is a long-time health/physical education (“P.E.”) teacher and football coach employed by defendant, East Baton Rouge Parish School Board (the “School Board”) since 1997. During the school years of 2001-2002 to 2005-2006, Burnett served as the athletic director and head football coach at Glen Oaks High School (“GOHS”) in Baton Rouge, Louisiana. GOHS is a school with a predominantly black student population. Coaching positions in East Baton Rouge Parish schools are assigned by the principal of each school. When Burnett became head football coach and athletic director at GOHS in 2001, the principal was a white female, Mildred Henry. In 2003, Henry retired, and a black male principal, Wilbert C. August, was assigned to GOHS.
August did not make any coaching or administrative changes when he began his position as principal at GOHS, but he did change Burnett’s teaching responsibilities *57 from P.E. classes to health classes.[1] The change in teaching assignments was necessary due to dropping enrollment at GOHS, which affected the other P.E. teachers as well. After three football seasons with Burnett as head coach, August met with Burnett on November 18, 2005, and notified him that he was immediately removing Burnett from the head football coach position. At the same meeting, he gave Burnett an option to remain in the athletic director position until the end of the school year, with fifteen days to file a rebuttal.
| sAugust outlined several written reasons for his coaching removal decision in a confidential letter that he gave to Burnett when they met on November 18. The reasons primarily focused on job performance, meeting attendance, and discipline issues, as well as an unsuccessful football season and August’s perception that Burnett lacked the “leadership and drive” to take the athletic program to a higher level. Burnett did not respond in writing that he desired to remain as athletic director, although he verbally informed August the day after the meeting that he would finish the school year as athletic director. Nevertheless, in January 2006, August notified the School Board that effective January 23, 2006, Burnett would no longer be serving as athletic director or head football coach at GOHS. Burnett learned of his replacement in a January 21, 2006 newspaper article about GOHS football. August assigned two black males to fill the two positions vacated by Burnett: Herman R. Brister, Jr., who was the dean of students and an assistant football coach at GOHS, was selected as the head football coach, and Harvey Adger, a P.E. teacher and head coach of the boy’s basketball team at GOHS, was selected as the athletic director. Burnett’s teaching position at GOHS remained the same until he was transferred to Woodlawn High School in March 2007. Burnett is still employed by the School Board, teaching P.E. and serving as an assistant football and track coach at Woodlawn.
At the meeting where August informed Burnett that he was being removed as head football coach, Burnett told August, “We both know what this is about.” August responded that Burnett was “accusing me of being a racist.” To which Burnett replied, “No, ... I am accusing you of making a racist statement.” Burnett was referring to several allegedly threatening comments that August had purportedly made to the effect that white people/coaches did not understand black kids/athletes or their culture, that they did not know how to relate to or discipline black kids, and that he preferred to have a black coach for the black athletes. |4August denied making the alleged race-based comments, and he was offended that Burnett felt that race was an issue in the dismissal. August and his assistant principal, Pamela Newton Jennings, both acknowledged, however, that August had made periodic statements to all GOHS faculty stressing the importance of understanding the home life, culture, poverty, and background of the predominantly black student population that they served at GOHS. Further, August admitted that he had told parents that GOHS had two young assistant coaches, who were black, working with and relating to the kids, to be good examples for the kids.
Burnett never filed any formal racial discrimination complaint or grievance with the School Board expressly requesting an investigation, but he did mention his con *58 cerns to the parish athletic director, Ken Jenkins, and later to the School Board’s human resources department. The School Board did not formally investigate the situation, except to research the supplemental pay issues. It was not until after he was relieved of his coaching duties and his supplemental pay was cut in January 2006, instead of at the end of the school year, that Burnett complained in writing to the School Board. In a statement attached to an email sent to the School Board’s human resources department on March 22, 2006, Burnett complained about a pattern of discrimination and harassment that resulted in his removal as head football coach and athletic director at GOHS, and he requested that his supplemental pay for those two positions be retroactively restored and that he be transferred to another school.
On March 81, 2006, the School Board informed Burnett that his coaching supplement would be retroactively paid through March 5, 2006, which was the day before the new head coach, Brister, was scheduled to begin spring football practice. The School Board determined that Burnett’s athletic director supplemental pay properly ended when he no longer performed those duties, as of |5January 28, 2006. The School Board did not administratively transfer Burnett to another school at that point, because they saw no need to do so. However, the following school year, in March 2007, Burnett was transferred to Woodlawn High School after the Wood-lawn principal recommended the transfer, and Burnett completed the paperwork, following the School Board’s transfer procedure.
Burnett filed an EEOC charge against the School Board on April 20, 2006. He timely filed this lawsuit on February 28, 2007, after receiving his right-to-sue notice from the U.S. Department of Justice. In his lawsuit, Burnett sought damages for racial discrimination and harassment connected with his removal as head football coach and athletic director at GOHS, and for retaliation, because his pay supplements were stopped before the end of the school year and because he was denied a transfer in the spring of 2006 after he filed a charge of discrimination with the EEOC. The School Board denied all of Burnett’s allegations. A three-day bench trial was held on April 19-21, 2011, and on May 5, 2011, the trial court issued oral reasons for judgment, dismissing all of Burnett’s claims against the School Board. The trial court indicated that after considering the conflicting testimony of the witnesses and evaluating each witness’s credibility, the evidence failed to establish that August or the School Board had discriminated against or harassed Burnett on the basis of his race. The trial court also determined that the School Board did not illegally retaliate against Burnett for filing a charge of discrimination with the EEOC. A written judgment was signed on May 20, 2011.
Burnett filed the instant appeal, assigning error as follows: (1) the trial court applied an incorrect burden-shifting analysis when there was direct evidence of racial discrimination; (2) the trial court erred in finding a legitimate nondiscriminatory reason for Burnett’s removal as head coach and athletic director; (3) the trial court erroneously rejected Burnett’s race-based harassment claim by not considering the totality of the circumstances; (4) the trial court applied an incorrect | fistandard for a race-based harassment claim; and (6) the trial court erroneously rejected Burnett’s claim of retaliation.
LAW AND ANALYSIS
When the employer and employee are silent on the terms or duration of the employment contract, the Louisiana *59 Civil Code provides the default rule of employment-at-will. Quebedeaux v. Dow Chemical Co., 2001-2297 (La.6/21/02), 820 So.2d 542, 545. It is undisputed that Burnett’s head football coach and athletic director positions at GOHS were at will. Generally, an employer is at liberty to dismiss an at-will employee at any time for any reason without incurring liability for the discharge. See La. C.C. art. 2747; Quebedeaux, 820 So.2d at 545. In fact, there need be no reason at all for the discharge. Fletcher v. Wendelta, Inc., 43,866 (La.App.2d Cir.1/14/09), 999 So.2d 1223, 1230, writ denied, 2009-0387 (La.4/13/09), 5 So.3d 164. However, that right is tempered by numerous federal and state laws which proscribe certain reasons for dismissal of an at-will employee, such as race, sex, or religious beliefs. Id., 999 So.2d at 1229.
Burnett contends he is the victim of reverse-race discrimination and harassment, as well as retaliation for protesting the discrimination allegedly perpetrated by his employer. Under Louisiana law, it is unlawful for an employer to intentionally discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, based on the individual’s race, color, religion, sex, or national origin. La. R.S. 23:332(A)(1). Discrimination is also unlawful under federal law pursuant to Title VII, as amended, of the Civil Rights Act of 1964 and subsequent legislation. See 42 U.S.C. § 2000e, et seq.; see also 42 U.S.C. § 1981. Because Louisiana law on discrimination mirrors federal law, Louisiana courts routinely look to federal jurisprudence for guidance in determining whether a claim of racial discrimination [7has been asserted and the proper sequence of the burden of proof has been followed. King v. Phelps Dunbar, L.L.P., 98-1805 (La.6/4/99), 743 So.2d 181, 187; Seagrave v. Dean, 2003-2272 (La.App. 1st Cir.6/10/05), 908 So.2d 41, 45, writ denied, 2005-2349 (La.3/17/06), 925 So.2d 543, cert. denied, 549 U.S. 822, 127 S.Ct. 157, 166 L.Ed.2d 38 (2006); St. Romain v. State, Through the Dept. of Wildlife and Fisheries, 2003-0291 (La.App. 1st Cir.11/12/03), 863 So.2d 577, 586, writ denied, 2004-0096 (La.3/26/04), 871 So.2d 348. It is well settled that Title VII actions may be maintained by white individuals. McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 279-80, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976).
An employee claiming discrimination or retaliation has the initial burden of proof and must establish a prima facie case under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). When the discrimination claim is based on circumstantial evidence, as is usually the case, the well-established burden-shifting analysis provided in McDonnell Douglas applies. Seagrave, 908 So.2d at 45. Circumstantial evidence may be as persuasive as testimonial or direct evidence in demonstrating the existence or nonexistence of a fact issue. Holloway v. State ex rel. Bd. of Sup’rs of LSU, 2010-1754 (La.App. 4th Cir.5/25/11), 66 So.3d 1222, 1227. “Direct evidence” consists of testimony from a witness who actually saw or heard an occurrence, proof of the existence of which is at issue. “Circumstantial evidence” is evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts, according to reason and common experience. Id.; State v. Moore, 46,252 (La.App.2d Cir.5/18/11), 69 So.3d 523, 532, writ denied, 2011-1260 (La.12/2/11), 76 So.3d 1175.
 To establish a prima facie case of discrimination, an employee must establish by a preponderance of the evidence that: (1) he was a member of a | ^protected *60 class such as a racial minority; (2) he was qualified for the position; (8) he suffered an adverse employment action such as a discharge; and (4) he was replaced by someone outside the protected class who was treated more favorably. McDonnell Douglas, 411 U.S. at 802, 98 S.Ct. at 1824; Seagrave, 908 So.2d at 45. Likewise, to establish a prima facie case for retaliation, the employee must prove by a preponderance of the evidence that: (1) he engaged in a protected activity, such as filing an EEOC charge of discrimination; (2) an adverse employment action occurred; and (3) a causal link existed between the pro-' tected activity and the adverse employment action. See Fletcher, 999 So.2d at 1230.
Once the employee establishes a prima facie case, the burden shifts to the employer to set forth a legitimate non-discriminatory or non-retaliatory explanation for the adverse employment decision. McDonnell Douglas, 411 U.S. at 802-03, 93 S.Ct. at 1824-26; Fletcher, 999 So.2d at 1230. The burden is one of production and not persuasion, and does not involve a credibility assessment. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). If the employer introduces evidence which, if believed, would support the conclusion that the adverse action was non-discriminatory or non-retaliatory, the employee then assumes the ultimate burden of proving by a preponderance of the evidence that the reasons given by the employer were not the true reasons for the employment decision and that the true reasons involved impermissible race discrimination and/or illegal retaliation. See St. Mary’s Honor Center v. Hicks, 509 U.S. 502, 506-08, 113 S.Ct. 2742, 2747-48, 125 L.Ed.2d 407 (1993); McDonnell Douglas, 411 U.S. at 802-04, 93 S.Ct. at 1824-26; Seagrave, 908 So.2d at 45. In other words, at that point the employee must show that “but for” the protected class or activity, the dismissal or other adverse employment decision would not have occurred. See Fletcher, 999 So.2d at 1230.
IflAfter a case has been fully tried, as in the case sub judice, the burden-shifting analysis used by the trial court ceases to be of singular or paramount importance to the appellate court. Instead, the inquiry for us becomes whether the record contains sufficient evidence to support the conclusions reached by the fact finder. See Seagrave, 908 So.2d at 45-46. When there is conflict in the testimony, reasonable inferences of fact and reasonable evaluations of credibility should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. When there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands great deference to the trier of fact’s findings. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Discrimination (Assignments of Error One and Two)
Our review of the evidence reveals that the record contains sufficient evidence to support the trial court’s conclusions regarding discrimination. The testimony at trial was extremely conflicting as to whether August or a parent had actually made the alleged race-based comments at a 2005 parent-booster club meeting a few months before Burnett was dismissed as head coach. In oral reasons for judgment, the trial court specifically noted that none of the parents were called to testify in order to confirm that August had made the al *61 leged comments. [R. 604] The trial court also considered the individual testimony of Burnett when he claimed that August had made inappropriate and threatening race-based comments to him in 2003 and 2004. But the trial court had difficulty believing that the comments had actually been made, since August consistently denied making any comments about the race of the coach at any time.
| mWe find the testimony of the assistant principal, Jennings, to be pertinent, because she testified that August periodically discussed the necessity of understanding the background and culture of the GOHS students from a racial and poverty standpoint with all GOHS faculty, not just Burnett. Further, in order for comments in the workplace to provide sufficient evidence of discrimination, they must be proximate in time to the dismissal and related to the employment decision. Seag-rave, 908 So.2d at 46-47. The alleged comments that occurred in 2003 and 2004 do not provide sufficient evidence of discrimination, because they were not made near the time of Burnett’s removal as head coach or athletic director. Mere concluso-ry statements or personal and subjective beliefs by an employee that he was discriminated against are not sufficient to prove discrimination. Plummer v. Marriott Corp., 94-2025 (La.App. 4th Cir.4/26/95), 654 So.2d 843, 849, writ denied, 95-1321 (La.9/15/95), 660 So.2d 460.
Additionally, the trial court found that the testimony of Brister, the coach who replaced Burnett, was the most reliable concerning August’s alleged race-based comments at a 2005 parent-booster club meeting a few months before Burnett was replaced as head coach. The trial court noted that Brister testified that he attended the meeting, but he did not hear August make any remarks about wanting a black coach for the black kids or that a white coach could not coach the black kids. The trial court summarized the testimony of the other two assistant football coaches who attended the 2005 parent-booster club meeting, Vernon A. Langley, Jr. and Michael Jones, concluding that the evidence revealed it was a parent who had actually made the comment about wanting a black coach for the black kids, after which August remarked that GOHS had two young black assistant coaches (Langley and Bris-ter), who were coaching and relating to the kids. While Jones stated that August had made race-based comments agreeing with the parent |, ,who initiated the conversation, both Langley and Brister rebutted that testimony, stating that August had not made any race-based statements.
The trial court acknowledged the difficulty of determining whether August had made the race-based comments, given the conflicting testimony at trial. After weighing the evidence, the trial court decided that August’s dismissal of Burnett as head football coach and athletic director was not a discriminatory action and had nothing to do with Burnett’s race. Instead, the trial court determined that the School Board had demonstrated that August had some legitimate nondiscriminatory reasons — job performance, attendance at important meetings, and lack of discipline — for replacing Burnett as head football coach and athletic director.
We find no manifest error in the trial court’s credibility determinations in this regard and conclude that there was no racial discrimination, given the two permissible views of the evidence. The trial court’s decision to favor Brister’s testimony over all other witnesses is a classic credibility call left to the discretion of the trial court. A trial court’s ruling on a witness’s credibility is entitled to “great deference” and will not be overturned unless there is no evidence to support those *62 findings. An appellate court errs in substituting its own credibility judgment for that of the trial court, and we find no reason to do so considering the clear conflict in the testimony. See Foshee v. Georgia Gulf Chemicals & Vinyls, L.L.C., 2009-2477 (La.7/6/10), 42 So.3d 346, 349. Thus, Brister’s assignments of error one and two are without merit.
Harassment (Assignments of Error Three and Four)
Next, the trial court considered the evidence regarding the issue of harassment, allegedly resulting from a hostile or offensive work environment, that began shortly after August became principal in 2003. To prevail on his hostile work environment/harassment claim, Burnett had to assert and prove that: (1) he l12belonged to a protected group; (2) he was subjected to harassment; (3) the harassment was motivated by discriminatory animus (race); (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. Hicks v. Central Louisiana Electric Co., Inc., 97-1232 (La.App. 1st Cir.5/15/98), 712 So.2d 656, 658-59.
In general, harassment/hostile work environments are characterized by multiple and varied incidents of offensive behavior that cumulatively have the effect of victimizing the employee. Brooks v. Southern University and Agr. and Mech. College, 2003-0231 (La.App. 4th Cir.7/14/04), 877 So.2d 1194, 1220, writ denied, 2004-2246 (La.11/19/04), 888 So.2d 208. In determining whether a work environment is discriminatorily abusive, the fact finder looks at all of the circumstances, such as: (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; (4) whether it unreasonably interferes with an employee’s work performance; and (5) the effect on the employee’s psychological well-being. Id., 877 So.2d at 1220-21.
In its oral reasons for judgment, the trial court outlined the evidence concerning each assertion constituting Burnett’s harassment claim before making a finding that the evidence did not support the claim. The trial court considered August’s request that Burnett teach math shortly after August came to GOHS in 2003, and then August’s requirement that Burnett teach health instead of P.E. classes, which was outside of his area of certification. The trial court also reflected on Burnett’s testimony about the moldy condition of the health classroom, the overall rundown condition of the GOHS facilities, the lack of janitorial services in the field house and the filthy locker room areas, the lack of air conditioning and phone service in the field house, and other GOHS maintenance issues that Burnett | ^alleged were not properly addressed by August. Additionally, the trial court considered Burnett’s assertion that the School Board ignored his allegations of racial discrimination.
Our review of the entire record contains sufficient evidence to support the trial court’s findings that it is not unusual for teachers to teach outside of their areas of certification, as long as they obtain OF AT certification from the School Board, which Burnett did, and that all teachers underwent weekly classroom observation/evaluation, not just Burnett. Also, the evidence reflects that all of the health classes at GOHS had been held in the same classroom where Burnett was assigned to teach, and no one had ever complained about the condition of the classroom. Additionally, the evidence showed that the coaches that served after Burnett — first Brister and then Langley, both of whom *63 were black males — experienced similar maintenance and cleaning issues in and around the field house while they each served as head coach. The evidence also clearly showed that it was the coaches and volunteers that did much of the cleaning and maintenance in the field house and stadium areas with donated materials and funds, and there had been no major repairs to GOHS in the last ten to fifteen years, not just when Burnett was head coach. There was absolutely no evidence in the record that August had ordered janitorial staff not to clean the field house or to ignore work orders that he had processed on behalf of Burnett.
As for Burnett’s assertion that the School Board’s lack of an investigation into his allegations of racial discrimination amounted to harassment, we find that the trial court made credibility determinations when reviewing the testimony of Burnett and the School Board’s human resource department representatives, Dawn Hall Fleming and Dr. Elizabeth Duran Swin-ford, and decided to credit their testimony over Burnett’s assertions. The trial court concluded that Burnett’s email communications with the School Board related to a request for restoration of his | ^supplemental pay for the head football coach and athletic director positions through the end of the 2005-2006 school year, rather than a request for the School Board to investigate the alleged pattern of racial discrimination and harassment. The evidence revealed that the School Board responded to Burnett’s request to review the ending date for his supplemental pay and retroactively adjust his pay, and nothing about the School Board’s response could be considered a form of harassment because of Burnett’s race.
We conclude that the record contains sufficient evidence to support the trial court’s conclusion that Burnett did not prove he was harassed by August or the School Board on the basis of race. Instead, the record reveals that Burnett endured the same conditions and experienced the same frustrations as any other health teacher or head coach at GOHS. After giving great deference to the trial court’s credibility determinations, we find that the School Board’s decision regarding Burnett’s supplemental pay did not amount to harassment on the basis of race. We cannot say it was unreasonable for the trial court to credit the School Board’s witnesses regarding the decision to process Burnett’s complaint as an official request to adjust his supplemental pay, rather than a request to investigate alleged racial discrimination that led to his dismissal. The trial court’s conclusions regarding harassment are not clearly wrong, and therefore, Burnett’s assignments of error three and four are without merit.
Retaliation (Assignment of Error Five)
Burnett’s last assignment of error is closely related to the harassment issue, in that Burnett maintains that the trial court erred in failing to find that the School Board illegally retaliated against him when it did not transfer him to another school in 2006 after he filed his EEOC charge of discrimination on April 20, 2006. As we previously outlined, it is unlawful for an employer to discriminate against an employee because the employee engaged in a protected activity. The filing of a 11scharge of discrimination with the EEOC is a protected activity. See Richard v. Board of Sup’rs of Louisiana State University and A & M College, 2006-0927 (La.App. 1st Cir.3/28/07), 960 So.2d 958, 961 n. 3. Our review of the record reflects that the time frame when Burnett requested that the School Board review, and the School Board decided to adjust, his supplemental pay and transfer him to another school occurred during March 2006, before *64 Burnett filed Ms EEOC charge. Thus, the evidence shows that Burnett did not establish a causal link between the filing of his EEOC charge and the School Board’s initial denial of his transfer request in 2006.
The record further reflects that almost a year after Burnett filed his EEOC charge and- approximately one month after he filed this lawsuit, Burnett completed the proper transfer procedure and was transferred to another school in March 2007. Arguably, even if we assumed that Burnett had established a link between the EEOC charge and the 2006 transfer denial, we find the record reasonably supports the conclusion that the School Board presented a legitimate, non-retaliatory reason for not transferring Burnett in 2006, since he did not complete the proper transfer procedure required by the School Board. Furthermore, Burnett’s eventual transfer in March 2007, after the EEOC charge and lawsuit were filed, shows that Burnett would not have been able to sustain his ultimate burden of showing that “but for” the filing of the EEOC charge, the transfer denial would not have occurred. See Fletcher, 999 So.2d at 1230. Therefore, the trial court’s conclusion that the School Board did not retaliate against Burnett was reasonable, sufficiently supported by the evidence, and not manifestly erroneous. Burnett’s fifth assignment of error is without merit.
CONCLUSION
For the reasons stated, we find that the record supports the trial court’s findings, and we conclude that the trial court did not commit manifest error. | ^Therefore, we affirm the trial court’s judgment rendered in favor of East Baton Rouge Parish School Board, dismissing the School Board from Gary Burnett’s lawsuit with prejudice. Costs associated with this appeal are assessed to Gary Burnett.
AFFIRMED.

. According to Burnett, August initially requested that he teach math classes, but Burnett declined since he was not certified to teach math. August obtained an OFAT (out-of-field authority to teach) certificate to teach health classes.