Judgment rendered May 20, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,508-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ETHELDRA C. SHARP                                    Plaintiff-Appellant

versus

JERRY MELTON; CITY OF                                Defendants-Appellees
MONROE, LA; CITY OF MONROE
POLICE DEPARTMENT;
MONROE REGIONAL AIRPORT;
DAL GLOBAL SERVICES, LLC

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2018-3497

Honorable Chet D. Traylor, Ad Hoc, Judge

* * * * *

GEORGE W. BRITTON III                          Counsel for Appellant,
                                               Etheldra C. Sharp

CARL VAN SHARP

BRANDON W. CREEKBAUM                           Counsel for Appellees,
ASSISTANT CITY ATTORNEY                        Jerry Melton; City of
                                               Monroe, LA; City of
                                               Monroe Police Dept. and
                                               Monroe Regional Airport

OGLETREE, DEAKINS, NASH,                        Counsel for Appellee,
SMOAK & STEWART, P.C.                           DAL Global Services, LLC
By: Mark N. Mallery
    Jennifer G. Mann

* * * * *

Before STEPHENS, McCALLUM, and THOMPSON, JJ.

**STEPHENS, J.**

Plaintiff, Etheldra C. Sharp, appeals a judgment by the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, granting an exception of no cause of action filed by defendant, DAL Global Services, LLC ("DGS"). For the following reasons, the judgment of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

Etheldra C. Sharp claims in a petition for damages that she was hired on September 25, 2017, by DGS to work at the Monroe Regional Airport (the "Airport"). DGS was in the business of providing airport and flight support services for airlines at the Airport. As a part of her employment, Sharp was required to complete certain training procedures in order to obtain an official badge for entry and exit to and from secure areas inside and outside the Airport terminal. Additionally, Sharp was required to park only in designated secure areas. Sharp alleges that soon after being employed and completing "badge training," she received a physical badge, which she realized was inoperable—it would not grant her access to the Airport's secure areas, including the secure parking area. Officer Jerry Melton, a Monroe Police Department employee and director of security for the Airport, oversaw Sharp's badge training and the issuance of badges for access to secure areas. Sharp asserts she informed Ofc. Melton as well as DGS that her badge was inoperable. As a result, Sharp claims she was instructed by DGS to park in a nonsecure area, and Ofc. Melton advised her he would correct the situation with her faulty badge. Sharp maintains that in accordance with DGS's instruction, she proceeded to park in the nonsecure parking area while awaiting a new badge from Ofc. Melton.

Thereafter, on or about October 20, 2017, Sharp was issued a new badge, which seemed to operate properly. Having previously parked in the nonsecure area upon arriving to work that day, Sharp completed her shift, and then left, not to return to work for approximately a week. When she returned to work, she parked in the nonsecure area without thinking. According to Sharp, she realized her error, and within minutes moved her vehicle to the secure parking area and returned to work in the Airport terminal. Shortly thereafter, Sharp was summoned to her supervisor's office, and her employment was terminated, with DGS stating the reason for her termination was for a parking violation. DGS further advised her that as a result of her termination, she would not be allowed to work for any other airline at the Airport for five years and her badge had been deactivated. Sharp subsequently sought clarification from DGS regarding her termination and was informed she had been terminated because her security clearance had been revoked by Ofc. Melton. Sharp never claimed an employment contract existed between her and DGS and maintains she was given no other explanation as to why her employment was terminated.

As a result, Sharp filed a petition for damages and named as defendants: DGS, Melton, the City of Monroe, the Monroe Police Department, and the Airport. In response, DGS filed an exception of no cause of action. In its exception, DGS states Sharp did not have an employment contract with DGS for a specified term and her petition fails to identify any statute that would bar her termination. Thus, according to DGS, she was an "at will" employee and DGS could legally dismiss Sharp at any time pursuant to La. C.C. art. 2747. Following a contradictory hearing on the matter, the trial court granted DGS's exception and entered judgment in

2

favor of DGS. After filing a motion for new trial, which was denied, this appeal by Sharp ensued.

## DISCUSSION

The peremptory exception of no cause of action is set forth in La. C.C.P. art. 927(A)(5). It tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. *Vince v. Metro Rediscount Co., Inc.*, 2018-2056 (La. 2/25/19), 264 So. 3d 440; *Pesnell v. Sessions*, 51,871 (La. App. 2 Cir. 2/28/18), 246 So. 3d 686. The purpose of the exception of no cause of action is not to determine whether the plaintiff will prevail at trial, but to ascertain if a cause of action exists. *Bogues v. Louisiana Energy Consultants, Inc*., 46,434 (La. App. 2 Cir. 8/10/11), 71 So. 3d 1128. A "cause of action," when used in the context of the peremptory exception of no cause of action, refers to the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. *White v. St. Elizabeth B.C. Bd. of Directors*, 45,213 (La. App. 2 Cir. 6/2/10), 37 So. 3d 1139. The exception is triable on the face of the petition, and for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Fink v. Bryant*, 2001-0987 (La. 11/28/01), 801 So. 2d 346. No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931.

The burden of demonstrating that the petition states no cause of action is upon the mover. *Wright v. Louisiana Power & Light*, 2006-1181 (La. 3/9/07), 951 So. 2d 1058; *Scheffler v. Adams and Reese, LLP*, 2006-1774 (La. 2/22/07), 950 So. 2d 641. All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy

3

to the plaintiff. *Villareal v. 6494 Homes, LLC*, 48,302 (La. App. 2 Cir. 8/7/13), 121 So. 3d 1246. An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle her to relief. If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. *Badeaux v. Southwest Computer Bureau, Inc.*, 2005-0612 (La. 3/17/06), 929 So. 2d 1211; *Stonecipher v. Caddo Par.*, 51,148 (La. App. 2 Cir. 4/7/17), 219 So. 3d 1187, *writ denied*, 2017-0972 (La. 10/9/17), 227 So. 3d 830.

An appellate court's review of a trial court's ruling sustaining an exception of no cause of action is *de novo* because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. *Fink, supra*. The essential question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's favor, the petition states any valid cause of action for relief. *Wright, supra.*

On appeal, Sharp asserts in two related assignments of error that the trial court erred in granting DGS's exception of no cause of action based on its erroneous conclusions that: 1) Sharp was seeking damages for wrongful termination by DGS; and, 2) Sharp was an at-will employee. Sharp argues her termination was merely one result of DGS's harmful acts against her and that "the clearest articulation" of her actual cause of action against DGS is the following paragraph of her petition:

4

> Delta Global Services damaged the Petitioner by directing her to park in areas which ostensibly resulted in her termination and by failing to take any steps to secure her prompt badge activation.

In response, DGS argues that whether Sharp casts her purported cause of action as a tort claim or as an employment termination claim, the operative facts she asserts in her petition do not give rise to a viable cause of action under Louisiana law. Upon conducting a *de novo* review of the record and carefully reviewing the content of Sharp's petition in the light most favorable to her, we conclude it does not state a cause of action for which the law affords a remedy on the facts alleged.

While noting Sharp's argument that her petition does not purport to articulate a cause of action for wrongful termination, we nevertheless find Sharp has no cause of action against DGS for wrongful termination. The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. When the employer and employee are silent on the terms of the employment contract, the Civil Code provides the default rule of employment-at-will. *Quebedeaux v. Dow Chemical Co.*, 2001-2297 (La. 6/21/02), 820 So. 2d 542; *Fletcher v. Wendelta, Inc.*, 43,866 (La. App. 2 Cir. 1/14/09), 999 So. 2d 1223, *writ denied*, 2009-0387 (La. 4/13/09), 5 So. 3d 164. The rule is set forth in La. C.C. art. 2747, which provides, "A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause." Under La. C.C. art. 2747, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge.

*Quebedeaux*, *supra*; *Fletcher*, *supra*. However, this right is tempered by various federal and state laws which prohibit terminating an employee for certain reasons such as race, sex, or religious beliefs.[1] State statutes also prevent the employer from discharging an employee for exercising certain statutory rights.[2] *Quebedeaux*, *supra*; *Jackson v. Mayo*, 42,970 (La. App. 2 Cir. 2/13/08), 975 So. 2d 815, *writ denied*, 2008-0553 (La. 4/25/08), 978 So. 2d 371. Thus, as long as the termination does not violate any statutory or constitutional provisions, it is without liability to the employer. *Jackson*, *supra*; *Clark v. Acco Systems Inc.*, 39,532 (La. App. 2 Cir. 4/6/05), 899 So. 2d 783.

Sharp's petition fails to allege her employer-employee relationship with DGS consisted of an employment contract with specific terms regarding duration which her termination violated. In other words, Sharp fails to allege she was ***not*** an at-will employee subject to termination at any time for any reason. Moreover, Sharp's petition does not claim her termination violated any statutory or constitutional provisions. Such claims are critical for Sharp to successfully state claims against DGS. Accordingly, the operative facts contained in Sharp's petition simply do not give rise to her right to judicially assert an action for wrongful termination against her employer.

---

[1] See, e.g., 42 U.S.C. § 2000e *et seq.*, prohibiting discrimination by both private and government employers in all aspects of employment based on race, religion, sex, color, or national origin; 42 U.S.C. § 1981, prohibiting discrimination based on race; and La. R.S. 23:301 *et seq.*, prohibiting intentional discrimination in terms or conditions of employment based on race, color, creed, religion, sex, national origin, disability, age, and sickle cell trait.

[2] See, e.g., La. R.S. 23:1361, prohibiting retaliation against workers' compensation claimants.

Furthermore, Sharp's petition does not contain a set of facts in support of ***any*** claim which would entitle her to relief. Sharp contends on appeal that the actual harm to her was the withdrawal of her security clearance, not the termination of her employment. Louisiana C.C. art. 2315 (A) provides that "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a particular case. Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and, (5) actual damages. *Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. 10/15/14), 171 So. 3d 851; *Flipping v. JWH Properties, LLC*, 50,648 (La. App. 2 Cir. 6/8/16), 196 So. 3d 149. The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty and whether a duty is owed is a question of law. *Bufkin, supra.*

The operative facts stated in Sharp's petition do not support the assertion that DGS owed any duty to Sharp with regard to her badge or security clearance. DGS is not the party responsible for either the grant or withdrawal of an employee's security clearance. DGS merely requires that as a condition of their employment, employees undergo the necessary training and obtain an official badge for access to secure areas. It is undisputed that Ofc. Melton, not DGS, withdrew Sharp's security clearance. Employers do, in accordance with state and federal regulations, owe certain

duties to their employees, such as the duty to: pay minimum wage; provide a reasonably safe and healthy place to work; and, treat employees fairly. However, there is no statutory or jurisprudential authority which would support a claim against DGS on Sharp's behalf. Likewise, Sharp's petition does not claim the existence of an employment contract establishing any duty DGS owed to Sharp involving the attainment or maintenance of her badge or security clearance.

Sharp asserts, however, that DGS is liable to her for the withdrawal of her security clearance because its instruction lead Sharp to commit the offense which Ofc. Melton cited as the basis for the withdrawal. Even if DGS owed a relevant duty to Sharp, the facts alleged in her petition simply do not support the claim that DGS's prior instructions were the legal cause of Sharp's harm. Sharp's petition states that DGS, upon learning Sharp's badge was not working properly, instructed her to park in a nonsecure area. However, Sharp also admits in her petition that even after she received a new, properly working badge, she "without thinking, parked in the same parking area that she had been parking in for several weeks." Officer Melton subsequently deactivated Sharp's badge and revoked her security clearance, and DGS terminated her employment. According to Sharp's petition, DGS advised Sharp she had been terminated because her security clearance had been revoked, while Ofc. Melton advised Sharp her security clearance had been revoked because of a "parking violation."

Sharp admits she mistakenly parked in a nonsecure area after she had received valid security clearance and a working badge. DGS's instructions for Sharp to temporarily park in the nonsecure area was an apparent attempt to accommodate her continued employment while Ofc. Melton addressed the

8

issue with her faulty badge. Based on Sharp's realization she could park in the secure area and subsequent decision to promptly remove her vehicle from the nonsecure parking area, the receipt of her operable badge seemingly reinstated the standard prohibition against parking in the nonsecure area. Sharp was obviously aware the validity/applicability of those instructions by DGS ceased once she was issued a valid, working badge, as indicated by the fact that Sharp quickly realized her mistake and moved her vehicle to the proper secure parking area. Therefore, it was not DGS's instruction that led to the revocation of Sharp's security clearance—it was Sharp's own actions that resulted in the "parking violation." Accordingly, having made all reasonable inferences in her favor, we find Sharp's petition fails to state a cause of action against DGS. Sharp's assignments of error are without merit.

## CONCLUSION

For the foregoing reasons, the trial court's grant of the exception of no cause of action in favor of DAL Global Services, LLC, dismissing the claims of Etheldra C. Sharp, is affirmed. Costs of appeal are assessed to Sharp.

**AFFIRMED.**