975 So.2d 815 (2008)
Robert P. JACKSON, Plaintiff-Appellee,
v.
James E. MAYO, et al., Defendant-Appellant.
Nos. 42,970-CA, 43,246-CA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*817 Nanci S. Summersgill, for Appellant.
Charles D. Jones, La Koshia R. Roberts, for Appellee.
Before GASKINS, MOORE and DREW, JJ.
MOORE, J.
The City of Monroe appeals two judgments in favor of its former cemetery director, Robert Jackson, who was fired for falsifying his compensatory time ("K-time") sheets. The first judgment declared that Jackson had not received a proper grievance procedure prior to his discharge and ordered him reinstated with backpay and full benefits. The second judgment ordered the city to pay Jackson's attorney fees of $32,600. Jackson has answered the appeal, seeking additional attorney fees. For the reasons expressed, we reverse.

Factual Background
Jackson was a 17-year employee of the Monroe Department of Public Works. In 2006, he was promoted to cemetery supervisor, earning $14.86 per hour. He was also an organizer for the city workers' Union, AFSCME, AFL-CIO Local # 2388. The labor agreement between the city and the Union provided a three-step grievance procedure, Art. VI, Section 2, which was central to the trial of the matter in the district court.
In Step 1, the employee presents an oral grievance to his immediate division head within five working days of the incident; the division head must respond within three working days. If this does not satisfy the employee, Step 2 requires him to submit a written grievance within three working days to his department head, who refers it to the city's personnel officer; these two jointly review it, conduct "an appropriate investigation" and render a written decision within seven working days. If this does not satisfy the employee, Step 3 requires him to submit a written grievance within three working days to the mayor, who may review the Step 1 and 2 evidence, meet with the employee or convene a grievance committee, but he must render a written opinion within five working days.
Between May and November 2006, Jackson filled out time slips requesting 408.75 hours of K-time. Jackson's immediate supervisor, Sanitation Supervisor Don Hopkins, approved these and forwarded them to the city's accounting office. In November 2006, Jackson asked for two weeks off, using his K-time. Hopkins approved this also.
While Jackson was off using K-time, however, the Director of Public Works, Cecil Janway, held a mandatory workshop for supervisors. Since taking the helm at Public Works in 2005, Janway had been correcting what he considered to be gross abuses of the K-time system, and he made Jackson use earned vacation time instead of K-time. Janway reviewed Jackson's K-time slips and found that of the 408.75 hours claimed, only 138.5 were due. He *818 found, for example, that Jackson claimed 8 hours for working on "June 31, 2006," a nonexistent date, and on July 1 and 2, part of the holiday weekend when no city employees were clocked in.
Janway called a meeting with Jackson and Hopkins on December 20, 2006. Accounts of this meeting differed. Janway testified that he asked Jackson to verify his K-time claims, and that Jackson could not recall them offhand but agreed to send his personal records by December 26. Hopkins confirmed that he pulled Jackson's K-time slips, which Janway compared with other city records; Janway questioned Jackson about the discrepancies, but Jackson could not explain them; and Janway gave him until December 26 to address those issues. Jackson, however, described the meeting as contentious. Specially, Janway challenged Jackson's authority over the city cemeteries, saying that if he oversees them, it must be "from up in the trees."
Perceiving this as a racial slur, Jackson lodged a Step 1 grievance (the "tree grievance") by immediately advising Hopkins of this verbally. Hopkins replied, "Do what you have to do," which Jackson construed as a denial. He therefore delivered a written grievance to Janway on December 21. Janway responded by a letter dated January 5, 2007, referring to the "grievance received 12/28/2006," apologizing for saying anything that could be "misunderstood or misconstrued" in a racist manner, but stating that the grievance was merely a diversion to distract attention from the ongoing investigation of the fraudulent K-time claims. Jackson ultimately contended that the January 5 response was nine working days after his Step 2 grievance and hence untimely.
Meanwhile, Janway and Hopkins received nothing from Jackson. On December 29, Hopkins sent Jackson a memo reminding him that the deadline had been extended until that date. Jackson replied by memo stating that the sanitation department had "all the necessary documentation" of his K-time, and reminding Hopkins that he (Hopkins) had been accepting these K-time slips since April 2006 without complaints, so he (Jackson) did not see why there was a problem now. Neither Janway nor Hopkins ever received any documentation from Jackson. On January 10, 2007, Jackson filed a Step 3 in the tree grievance with the mayor, James Mayo.
This was never acted on, however, because on January 11, Janway called Jackson to a final meeting to document his K-time claims. According to Janway, he asked Jackson once more to produce anything in support of his K-time claims; he did not, so Janway fired him for falsifying city records. Jackson, however, maintained that he protested: since Hopkins had approved all the K-time slips, he (Jackson) could not have falsified them. He also lodged a Step 1 oral grievance (the "termination grievance") with Hopkins at the close of this meeting; Hopkins denied it.
On January 19, he filed a Step 2 in the termination grievance with Janway, with a courtesy copy to the personnel director, Mike Rhymes. Not having received a response, on January 26 he forwarded his written grievance directly to the mayor, in what he deemed to be a Step 3 grievance. Mayor Mayo never responded to this grievance or to the Step 3 tree grievance.

Procedural Background
Jackson filed suit (Docket # 42,970-CA) on February 2, seeking a declaratory judgment that the city had not faithfully followed the grievance procedure, an injunction against violating the procedure and, in effect, an order reinstating him as cemetery *819 supervisor with all backpay and benefits, together with attorney fees.[1]
The city filed an exception of prematurity, urging that Jackson had not allowed the grievance process to run its course, specifically by filing suit before the mayor had responded to the Step 3 grievances.
At the beginning of trial on March 6, 2007, the court referred the exception to the merits. After hearing Jackson's testimony, the court overruled the exception, stating the city failed to show which procedure, if any, Jackson was required to perform as a prerequisite to filing suit.
Trial continued on March 7 and April 24, with some 13 witnesses, many establishing the time frame for Jackson's two grievances and the city's responses. Mayor Mayo testified that from his review of Jackson's K-time slips and other documents, he was convinced Jackson had falsified time records. He approved Janway's recommendation to terminate Jackson, and as far as he was concerned, the firing ended both grievances. The city offered Exhibit C-10, a set of other employees' time cards, to show that no employees were clocked in at some of the times when Jackson claimed K-time for supervising employees. However, Jackson objected to Ex. C-10 for lack of relevance and authentication, and the court excluded it.
Janway testified that since he became director of public works in 2005, errors in and abuse of the K-time system had been a major issue and liability to the city. A computer programming error had resulted in crediting at least one employee with four hours' K-time for every one hour earned. Janway initiated changes, such as limiting all employees to no more than 80 hours' K-time total, dividing the cemetery department into two crews so nobody would earn K-time or overtime for working weekends, and requiring all K-time slips to be signed not only by an immediate supervisor but also by the director of public works. Several employees related their experiences with the city's evolving K-time system. Don Hopkins, Jackson's immediate supervisor, testified that he unquestioningly signed Jackson's K-time slips because he had to trust his supervisors. Larry Marshall, the labor leader who was promoted to cemetery supervisor after Jackson's firing, testified that he actually filled out some of Jackson's K-time slips because Jackson lacked the knowhow to do so; however, he always used the dates and times provided by Jackson.
On rebuttal, Jackson reiterated that all the contested K-time slips had been approved by Hopkins, and asserted that he had actually worked more days than he reported. In support, he offered Ex. Jackson-P, a group of faxes and letters from local funeral directors, showing several funerals he had worked. He admitted that Janway and Hopkins were unaware of these documents, but insisted he had already filed them with the Department of Tax and Revenue. Over the city's objection to its hearsay and lack of authentication, the court admitted Ex. Jackson-P.

Action of the District Court
The court rendered a "Ruling, Judgment, & Order" holding that Jackson was terminated for "allegedly falsifying city records," but this occurred only after he had filed a grievance about a supervisor's derogatory comment, and it was that very supervisor who terminated him. The *820 court then found that Jackson was not subjected to a proper grievance procedure and not properly terminated for falsifying city documents. Listing 20 "areas of concern" and "the totality of the circumstances," the court found the termination was wrongful. The court cast the city with costs but denied Jackson's claim for attorney fees, citing in a footnote the lack of statutory or contractual authority and "no evidentiary offering." The court signed a judgment on June 9, 2007, reinstating Jackson with backpay and benefits, and denying attorney fees. The city filed a motion for suspensive appeal which the court granted on June 28.

Subsequent Procedural History
Jackson filed a "petition for supplemental relief" seeking attorney fees (Docket # 43,247-CA) on August 13, 2007. In support he cited La. C.C.P. art. 1878's provision, "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." He also attached an invoice claiming that from a client interview on January 30 through the submission of memorandum on May 21, counsel logged 163 hours and 50 minutes at $200 per hour, for a total of $32,600.
The city filed exceptions of lack of subject matter jurisdiction and res judicata, urging that under La. C.C.P. art.2088, the court lost jurisdiction once it granted the appeal in the first suit. Further, the court expressly denied attorney fees in the first judgment, thus precluding further litigation.
After a hearing limited to arguments, the court rendered "Reasons for Judgment" quoting the footnote in its "Ruling, Judgment, & Order." The court ruled that its prior denial of attorney fees was provisional only; hence it retained jurisdiction to award them later. Further, it ruled that attorney fees are "additional relief" recoverable under Art. 1878. Finally, the court found that counsel's itemization and hourly rate were reasonable, so attorney fees were appropriate as requested. The court rendered "Article 1918 Judgment" on November 27, denying the city's exceptions and awarding $32,600 in attorney fees. The city took a suspensive appeal, and this court consolidated the matters for decision.

Discussion: Exception of Prematurity
By its first assignment of error, the city urges the district court erred in overruling the exception of prematurity. It shows that an employee must exhaust the grievance procedure before filing suit unless the case fits into an exception to the exhaustion requirement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Bailey v. American Sugar Refinery, 342 So.2d 1268 (La.App. 4 Cir.), writ not cons., 345 So.2d 60 (1977). The instant labor agreement is phrased in mandatory terms ("the employee shall present the grievance") and nowhere suggests the procedure is optional. Specifically, Jackson filed suit before the city had completed its Step 3 review. By its second assignment, the city urges the court erred in applying a "totality of the circumstances" test to determine whether Jackson received due process under the grievance procedure. At oral argument, however, the city conceded that no practical purpose would be served by remanding the case for completion of the procedure.
Jackson responds that the grievance procedure is not mandatory, but merely discretionary. In support, he cites the preamble of the grievance section ("he/she has the right to sue the grievance procedure[2] without fear of coercion") and shows *821 that nothing in the contract requires the employee to complete a grievance before filing suit. Further, requiring him to complete the procedure would be vain and useless, and perhaps farcical, since Janway and Mayo have made their positions perfectly clear. Robinson v. Baton Rouge, 566 So.2d 415 (La.App. 1 Cir.1990); Bagert v. Moreau, 325 So.2d 702 (La.App. 4 Cir.), writs denied, 329 So.2d 465, 466, 467 (1976). The court did not abuse its discretion in viewing the totality of the circumstances: Jackson attempted to follow the process, but getting untimely responses from Janway and Rhymes, and no response from Mayo, he was entitled to file suit. He concludes that the city's failure to satisfy the grievance procedure violated his due process rights, with the result that his termination was wrongful.
A party must generally exhaust his administrative remedy before he can seek relief by suit. Republic Steel Corp. v. Maddox, supra; Bailey v. American Sugar Refinery, supra; Landers v. Integrated Health Serv. of Shreveport, 39,739 (La. App. 2 Cir. 5/11/05), 903 So.2d 609. On this record, however, the normal remedy of remanding the case for strict compliance with the grievance procedure would be simply redundant. Both sides have disregarded the procedure. We disapprove of the city's casual and untimely handling of the tree grievance, notably Janway's transparent attempt to skirt the process by simply declaring that Jackson's Step 2 grievance was "received" on December 28, when in fact it was plainly filed a week earlier. We also do not condone Jackson's apparent eagerness to file suit only three days into the five-day period prescribed to resolve the Step 3 termination grievance. Although the collective bargaining agreement should have averted litigation, in this case it failed to do so.
We therefore conclude that remanding the case for full compliance with the grievance procedure would serve no useful purpose and the district court did not err in overruling the exception of prematurity. These assignments of error lack merit.

Evidentiary Rulings
By its fifth assignment of error, the city urges the district court erred in allowing Jackson to present at trial evidence which he did not present to his supervisors prior to his termination. Admitting Ex. Jackson-P, the faxes and letters from funeral directors, amounted to "trial by ambush" which is disfavored in judicial review of grievance cases. Gulf Coast Indus. Workers Union v. Exxon Co. USA, 991 F.2d 244 (5 Cir.1993); Oil, Chemical & Atomic Workers v. Union Oil Co. of Calif., 818 F.2d 437 (5 Cir.1987).
Jackson responds that the city made no contemporaneous objection and thus waived the right to contest the admission of Ex. Jackson-P on appeal. Hyland v. American Guarantee & Liab. Ins. Co., 04-305 (La.App. 5 Cir. 9/28/04), 885 So.2d 30.
The city initially objected to Ex. Jackson-P on grounds of lack of authentication and hearsay; later, it conceded that the papers were Jackson's own business records and withdrew the objection. The city thus waived the right to complain that the evidence was improperly admitted. La. C.E. art. 103 A(1); La. C.C.P. art. 1635. We will not second-guess counsel's strategy in dropping the objection. This assignment lacks merit.
By its third assignment of error, the city urges the district court erred in *822 refusing to admit Ex. C-10, other employees' time cards. These were offered to prove that no employees were clocked in on certain days when Jackson claimed K-time for supervising employees. The city submits that the court's reasons for excluding this were "not entirely clear," and that its action was an abuse of discretion. Bickham v. Riverwood Int'l Corp., 42,122 (La.App. 2 Cir. 10/8/07), 966 So.2d 820.
Jackson responds that he objected to this exhibit for lack of authentication. He contends that the city tried to authenticate them by the testimony of Ms. Joan Benton, a payroll clerk in the sanitation department, and not Janway, who had previously been identified as their custodian. The court even granted leave to take Ms. Benton's deposition, but the city failed to do so. Further, the city failed to show the relevance of the time cards and the court was well within its discretion to exclude them.
Relevant evidence is defined in La. C.E. art. 401 as follows:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
The city argued at trial that no cemetery employees were clocked in on certain days when Jackson was claiming K-time for supervising employees. Those employees' time cards were patently and emphatically relevant to prove this contention. The district court's ruling to the contrary is plainly wrong.
Authentication is regulated by La. C.E. art. 901, which provides in pertinent part:
A. General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
B. Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Article:
(1) Testimony of a witness with knowledge. Testimony that a matter is what it is claimed to be.
* * *
Ms. Benton testified that she was the payroll clerk for the sanitation department; as such, her duties included receiving regular and K-time records from employees' supervisors and entering them into the computer system. She was clearly a witness with knowledge of what the time cards were. In preparation for trial, she brought photocopies of cemetery employees' time cards dated May 31 through November 15, 2006. No evidence was offered to show that these records were incomplete, altered, or anything other than what they appear to be. On this record, they were sufficiently authenticated. The district court abused its discretion in ruling otherwise.
This assignment has merit.

Wrongful Termination and Reinstatement
By its fourth assignment of error, the city urges the district court erred in reviewing the city's actions de novo, placing the burden of proof on the defendant rather than the plaintiff, and not reviewing the city's employment decision for abuse of discretion. By its sixth assignment, the city urges the court erred in finding that Jackson did not falsify records. Taken together, these assignments contest the court's finding that Jackson was wrongfully terminated and its order reinstating him to employment.
*823 Jackson responds that the matter was a three-day trial in which the city fully participated and due process was used to determine whether the termination was legal under the terms of the labor agreement. He further submits the court committed no manifest error in finding that Jackson did not falsify his K-time records.
An employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge. La. C.C. art. 2747; Quebedeaux v. Dow Chemical Co., 2001-2297 (La.6/21/02), 820 So.2d 542; Chandler v. Kenyan, 38,084 (La.App. 2 Cir. 12/19/03), 862 So.2d 1182. This right is tempered by various federal and state laws which prohibit terminating an employee for certain reasons such as race, sex or religious beliefs.[3] State statutes also prevent the employer from discharging an employee for exercising certain statutory rights.[4] However, aside from these statutory exceptions, there are no broad policy considerations creating exceptions to employment at will and affecting relations between employer and employee. Quebedeaux v. Dow Chemical Co., supra; McPherson v. Cingular Wireless LLC, 07-0462 (La.App. 3 Cir. 10/3/07), 967 So.2d 573.
As long as the termination does not violate any statutory or constitutional provisions, it is without liability to the employer. Clark v. Acco Systems Inc., 39,532 (La.App. 2 Cir. 4/6/05), 899 So.2d 783, and citations therein. In fact, there need be no reason at all for the termination. Id.; Simmons v. Westinghouse Elec. Co., 311 So.2d 28 (La.App. 2 Cir. 1975). The at-will doctrine provides a shield to employers so significant that only a few instances provide exception to the protection. Clark v. Acco Systems, supra. The employer's failure to follow a grievance procedure does not alter the essential nature of at-will employment. Keller v. Sisters of Charity, 23,363 (La.App. 2 Cir. 4/8/92), 597 So.2d 1113; Gilbert v. Tulane Univ., 909 F.2d 124 (5 Cir.1990).
The record easily shows that the city terminated Jackson for claiming 408.75 hours of K-time over a six-month period (averaging over 31 hours per week) when the city could validate only 138.5 hours (roughly one-third of the amount claimed). Exhibit C-10, which the district court erroneously excluded from evidence, supports the city's conclusions. When confronted about this large discrepancy, Jackson denied falsifying his records, asserting that because Hopkins had approved his individual K-time slips, he (Jackson) could not be at fault. He initially offered to document his claims, but over the course of three weeks he either failed or refused to comply. Even on the date of his firing, he tendered nothing in support. Of course, under the at-will doctrine no reason at all is needed to terminate an employee. However, on this showing, the city was entitled to find that Jackson had falsified his employment records by inflating his K-time requests and then refused to cooperate in the investigation. These were valid and nondiscriminatory grounds for termination. See, Pope v. Whitfield, 524 So.2d 108 (La.App. 4 Cir.1988); Department *824 of Social Services v. Schneeweiss, 588 So.2d 1185 (La.App. 1 Cir.1991).
Jackson raises several arguments in an effort to rebut the city's showing of a valid termination. First, he urges the city's records were incomplete and erroneous: Ex. Jackson-P, which the district court properly admitted into evidence, shows that 75 funerals occurred over the six months in question, while the city's records, by Jackson's count, reflect only 40 to 45. If Jackson and his staff worked 75 but clocked in for only half of them, then there is gross irregularity in Jackson's timekeeping skills which only corroborates the city's reasons for termination.
Next he contends the firing was improper before the completion of the grievance procedure, a procedure which he has already conceded was merely discretionary. The existence of the grievance procedure, which both sides did not fully honor, did not alter the city's right to terminate its employee. Keller v. Sisters of Charity, supra; Gilbert v. Tulane Univ., supra. Nothing in the labor agreement insulates an employee from firing or requires completion of the grievance procedure.
Finally he urges disparate treatment, in that no other employee has been fired for claiming more K-time than he supposedly earned. He cites James Vanburen, whose time was disallowed but he was not fired. However, the record shows that Vanburen received excess K-time due to a computer programming error, not because of inflated K-time slips. Two other employees, Hollis Watkins and Samuel Dickey, testified that the city had disallowed some of their K-time, mostly when Janway imposed the 80-hour maximum. There was no suggestion that either of these employees submitted inflated K-time slips.
In short, the city showed that Jackson was an at-will employee; although no cause was required, the city showed that it terminated him for falsifying his K-time records. The burden then shifted to Jackson to prove an exception to the at-will doctrine, specifically a constitutional or statutory violation. The evidence falls far short of meeting this burden. The district court was therefore plainly wrong to render a declaratory judgment that Jackson was wrongfully terminated and ordering him reinstated to his former position. The judgment is therefore reversed and the principal claim dismissed.

Attorney Fees
By three assignments of error, the city challenges the award of attorney fees. Specifically, it contends the district court erred in overruling the exceptions of lack of subject matter jurisdiction and res judicata, and in awarding attorney fees without any contractual or statutory basis.
Jackson responds that the "further relief" provision of La. C.C.P. art. 1878 conferred jurisdiction on the district court to hear the request for attorney fees, created an exception to the normal rule of res judicata, La. R.S. 13:4231, and authorized an award of attorney fees. He also contends that La. R.S. 23:632 grants attorney fees to a claimant who brings a "well-founded suit for unpaid wages." By answer to appeal he seeks an additional $7,400 for trial work and $5,000 for the appeal.
For the reasons already discussed, Jackson failed to prove either any exception to the at-will employment doctrine or that the city wrongfully terminated him. The failure of the principal claim obviously extinguishes any obligation for attorney fees. The judgment is reversed on this basis.
Even if Jackson could somehow prevail in his wrongful termination action, *825 the attorney fees could not stand. The petition for supplemental relief raises an issue barred by res judicata. The "Ruling, Judgment, & Order" denied attorney fees "at this time," but the final judgment, prepared by the district court itself, simply declares, "Plaintiff's request for attorney fees is denied." The judgment in favor of the defendant plainly extinguished the claim for attorney fees, barring any subsequent action on this claim. La. R.S. 13:4231(2).
Moreover, attorney fees are not allowed except where authorized by contract or statute. Smith v. State, XXXX-XXXX (La.3/11/05), 899 So.2d 516; THH Properties Ltd. Partnership v. Hill, 41,038 (La.App. 2 Cir. 6/2/06), 930 So.2d 1214. The labor agreement is simply silent as to attorney fees. The statute regulating payment of employees, La. R.S. 23:632, grants attorney fees "in the event of a well-founded suit for any unpaid wages" against an employer who fails or refuses to pay all amounts due under the terms of employment within 15 days of discharge, but there is no allegation that the city failed to pay Jackson within 15 days of his discharge on January 11, 2007.[5] Finally, we do not find that the supplemental relief provision of Art. 1878 grants attorney fees in this case. The authorities cited by Jackson are simply inapposite, and in the analogous situation of "further relief" under the federal Declaratory Judgment Act, 28 U.S.C. § 2202, attorney fees are disallowed unless provided by contract or substantive statute. Alyeska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); Mercantile Nat'l Bank at Dallas v. Bradford Trust Co., 850 F.2d 215 (5 Cir.1988). A plaintiff can acquire no greater substantive rights by framing his claim as one for declaratory judgment than in non-declaratory judgment circumstances.
The judgment awarding attorney fees is reversed and the claim is dismissed. The claim for additional attorney fees is a fortiori dismissed.

Conclusion
For the reasons expressed, both judgments are reversed and Robert P. Jackson's claims are dismissed in their entirety. Costs are to be paid by the plaintiff.
JUDGMENTS REVERSED.
NOTES
[1] The district court peremptorily granted a TRO on February 8, 2007, ordering Jackson's reinstatement. The next day, on the city's motion, another judge of the court (acting in Judge Alvin Sharp's absence) dissolved the TRO noting that a mandatory injunction under La. C.C.P. art. 3601 cannot issue without a hearing on the merits. City of New Orleans v. Board of Directors of La. State Museum, 98-1170 (La.3/2/99), 739 So.2d 748.
[2] This court strongly suspects that the quoted passage is a typographical error that should correctly read, "he/she has the right to use the grievance procedure without fear of coercion," since suit against a grievance procedure seems illogical, but "right to sue" is precisely the language appearing in the labor agreement.
[3] See, e.g., 42 U.S.C. § 2000e et seq., prohibiting discrimination by both private and government employers in all aspects of employment based on race, religion, sex, color or national origin; 42 U.S.C. § 1981, prohibiting discrimination based on race; and La. R.S. 23:301 et seq., prohibiting intentional discrimination in terms or conditions of employment based on race, color, creed, religion, sex, national origin, disability, age, and sickle cell trait.
[4] See, e.g., La. R.S. 23:1361, prohibiting retaliation against workers' compensation claimants.
[5] There is also no showing that Jackson's reporting to work on February 9, by virtue of a legally erroneous TRO which was revoked by that very afternoon, created any "terms of employment" to activate the statute.