GUIDRY, J.
^Plaintiff, Sheryl Mederos, appeals from a trial court judgment granting summary judgment in favor of defendants, St. Tammany Parish Government, Patricia Brister, Beverly Gariepy, and Leslie Montgomery, and dismissing her claims against them with prejudice. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
St. Tammany Parish Government (Parish) hired Mederos in 1982. Mederos became personnel manager over the personnel department for the Parish in the mid-1990s. The Parish thereafter adopted a home rule charter in 1998, implementing a president-council form of government.[1]
In 2012, Pat Brister became the Parish President. Brister decided to change the personnel department to a full service human resources department, and the Parish hired Mark Ferrer as its new human resources director in April 2012. During his employment, Ferrer issued a verbal warning to Mederos for using profanity, a written reprimand for poor work performance, and a written reprimand for providing incorrect retirement information to the Public Information Director.
Following Ferrer’s resignation in January 2013, the Parish hired Montgomery as the new human resources director on April 22, 2013. Thereafter, in May 2013, Montgomery suggested that Mederos take a few days off to decide if she was going to get on board with the changes being made in the structure of the department. Montgomery subsequently issued a written reprimand to Mederos on July 11, 20.13, detailing her work deficiencies. On August 12, 2013, Montgomery and Gariepy, the Parish’s Chief Financial Officer, met with Mederos and advised her that Montgomery had made the decision to terminate her employment. l.qHowever, because Me-deros was a long-term employee, she was given the opportunity to resign in liéu of termination. Mederos declined the offer, *33 and a discharge notice was prepared by the Parish.
Thereafter, on August 15, 2013, Mederos filed a request for a grievance procedure to appeal her discharge to the Parish grievance board. Mederos also requested a detailed explanation of the reasons for her discharge. However, because Mede-ros was concerned that she would not receive payment of her accrued sick leave if terminated, she subsequently informed Montgomery that she wished, to resign and retire to ensure receipt of her sick leave payout.[2] The Parish prepared an amended notice of separation indicating that Me-deros had retired. Montgomery subsequently denied Mederos’s request for a grievance hearing on August 28,2013, stating that because Mederos had elected to retire rather than be terminated, she did not qualify for rights under the grievance policy as defined in the Parish personnel policies manual.
On December 26, 2013, Mederos filed a petition for damages, naming the Parish, Brister, Gariepy, and Montgomery as defendants. Mederos alleged that she was constructively discharged without just cause and without due process of law. Mederos also alleged breach of contract and intentional infliction of emotional distress.
On March 17, 2014, Brister filed a peremptory exception raising the objection of no cause of action, asserting that Mederos failed to state a cause of action against her under 42 U.S.C. § 1983, for breach of contract, or for intentional infliction of emotional distress. The trial court sustained Bluster’s exception and gave Mederos an opportunity to amend her petition to state a cause of action. Mederos thereafter filed a first amended petition for damages on June 3, 2014, Rwhich, among other things, reflected that Mederos was suing Brister, Gariepy, and Montgomery in their individual capacities.'
Thereafter, Brister and the Parish and Gariepy and Montgomery filed motions for summary judgment asserting that Mede-ros was an at will employee and as such, had no property interest in continued employment with the Parish and could be terminated at any time by the Parish with or without cause. They also asserted that Mederos had no basis to sue any of the defendants in their individual capacity; that based on Mederos’s amended petition, she had deleted her intentional infliction of emotional distress claims against all of the defendants except Montgomery; and that because Mederos was an at-will employee, she cannot assert a claim for intentional infliction of emotional distress based on her employment.
Following a hearing on the motions, the trial court signed a judgment on June 30, 2015, granting Brister and the Parish’s motion for summary judgment and ordering that all of Mederos’s claims against these defendants be dismissed with prejudice. The trial court also granted Montgomery and Gariepy’s motion for summary judgment and ordered that all of Mede-rbs’s claims against them' be dismissed with prejudice as well. Mederos how appeals from the trial court’s judgment.
DISCUSSION

Motion to Supplement the Record on Appeal

On appeal, Mederos filed a motion to supplement the record, requesting to *34 file in this court an exhibit consisting of election results from the St. Tammany Parish general election held on November 21, 2015. However, this evidence was not presented to the trial court, as it was not obtained by Mederos until after the hearing on the defendants’ motions for summary judgment and after the trial court signed the judgment granting summary judgment in favor of the defendants and | ^dismissing Mederos’s claims against them. Because an appellate court cannot review evidence that is not in the record on appeal and has no jurisdiction to receive new evidence, we deny Mederos’s motion to supplement the record. See Buelle v. Periou, 04-2733, p. 4 (La.App. 1st Cir.12/22/05), 927 So.2d 1126, 1129, writ denied, 06-0160 (La.4/24/06), 926 So.2d 542; see also Lyons v. Terrebonne Parish School Board, 03-0325, p. 2 (La.App. 1st Cir.12/31/03), 868 So.2d 739, 740.

Standard of Review

A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Cooperative, Inc., 01-2956, p. 3 (La. App. 1st Cir.12/30/02), 836 So.2d 484, 486. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).[3] Only evidence admitted for purposes of the motion for summary judgment shall be considered by the court in its ruling on the motion. La. C.C.P. art. 966(F)(2).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must ^produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same .criteria that govern the trial court’s determination of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La.6/15/07), 958 So.2d 1199.

At Will Employment

In seeking summary judgment in the instant ease, the defendants asserted that Mederos was an at will employee and therefore is unable to show that she is entitled to relief for violations of due process or 42 U.S.C. § 1983 because she does not have a property interest in continued *35 employment.[4]
Louisiana’s law on employment at will is codified in La. C.C. art. 2747, which provides that “[a] man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.” Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge. See Quebedeaux v. Dow Chemical Co., 01-2297, p. 5 (La.6/21/02), 820 So.2d 542, 545. This right is tempered by various federal and state laws which prohibit terminating an employee for certain reasons such as race, sex, or religious beliefs. State statutes also prevent the employer from discharging an employee for exercising certain statutory rights. However, aside from these 17statutory exceptions, there are no broad policy considerations creating exceptions to at will employment. Quebedeaux, 01-2297 at p. 5, 820 So.2d at 545. As long as the termination does not violate any statutory or constitutional provisions, it is without liability to the employer. See Barton v. Jefferson Parish School Board, 14-761, p. 12 (La.App. 5th Cir.5/28/15), 171 So.3d 316, 324.
Employment at will applies even to government employees who are not protected by civil service provisions as well as to private industry employees. Tolliver v. Concordia Waterworks District No.1, 98-00449, p. 4 (La.App. 3rd Cir.2/10/99), 735 So.2d 680, 682, writ denied, 99-1400 (La.7/2/99), 747 So.2d 23.
In the instant case, the Parish’s home rule charter provides in Section 3-09, entitled Powers and Duties of the President, that the president shall have the power to “[a]ppoint and suspend or remove for just cause all Parish government employees and appointive administrative officers provided for by or under this charter, except as otherwise provided by this charter or other personnel rules adopted pursuant to this charter.”[5] (Emphasis added.) In 2000, the Parish adopted Ordinance No. 00-0174, which established personnel policies for the Parish as required by Section 4-10 of the home rule charter. Included as part of the personnel policies is a “Receipt and Acknowledgement of St. Tammany Parish Personnel Rules and Procedures;” This receipt, which was signed by new and existing Parish employees, specifically provides that: “I understand that by my acceptance of employment with St. Tammany Parish Government, I recognize that the employment relationship is at will and may be terminated by me or St. Tammany Parish Government at any time.”
In 2005, Mederos signed this receipt and acknowledgment form. At that time, Me-deros was the manager of the Personnel Department for the Parish. She | Swas responsible for ensuring that new employees signed the receipt and acknowledgment, and she had employees sign similar forms in the past. If fact, prior versions of the form even contained Mederos’s email and phone number on the letterhead. Mede-ros acknowledged in her deposition testimony that she was aware of what “at will” employment meant and that she only became aware of the just cause language in *36 the home rule charter after her separation from the Parish.
From our review of the record,' a clear reading of the language of the charter and the receipt and acknowledgment made part of the personnel policies adopted pursuant to the charter, it is evident that Mederos’s employment with the Parish was at will and that this at will relationship was the understanding between the parties. Further, while Mederos asserts that the at will language in the receipt and acknowledgment is in conflict with the just cause language in the home rule charter and therefore, is unconstitutional because it violates her right to due process, the charter clearly provides that the president’s rights with regard to appointment, suspension, and removal of Parish employees may be amended by personnel policies adopted pursuant to the. charter. As such, absent any other statutory or constitutional prohibition, Mederos has failed to present any evidence that her employment with the Parish was anything other than at will.
Therefore, because Mederos’s employment was at will, she did not have a property interest in her continued employment with the Parish, and accordingly, she cannot establish any violation by the defendants of her 14th amendment right to due process or violation of 42 U.S.C. § 1983 for failing to provide her with all of the reasons for her termination prior to her termination or for denying her a grievance hearing following her termination. See Huang v. Louisiana State Board of Trustees for State Colleges and Universities, 99-2805, pp. 12-13 (La.App. 1st Cir.12/22/00), 781 So.2d 1, 11; Jamerson v. Village of South Mansfield, 297 So.2d 490, 493 (La.App. 2nd Cir.1974).
| (Additionally, we note that in this case, Mederos ivas initially given the option to retire in lieu of termination. Mede-ros chose termination and filed a grievance with the Parish seeking review of her discharge. However, Mederos subsequently informed the Parish that she wished to retire so as to ensure receipt of her accrued sick pay, and the Parish amended her separation from employment to reflect that she retired. The Parish personnel policies clearly provide that grievances may be filed for: demotion or reassignment that involves a decrease in salary; suspension; or discharge as a result of disciplinary action. Accordingly, when Mederos chose to retire in lieu of termination, she effectively chose to relinquish her grievance claim and any alleged violations of her due process or Section 1983 rights .related to her termination, as the right to assert such claims is not afforded to employees who retire. See Russell v. Mosquito Control Board, 06-0346, p. 9 (La.App. 4th Cir.9/27/06), 941 So.2d 634, 640.

Individual Liability

In addition to suing the' Parish for alleged violations of her due process and Section 1983 rights, Mederos also sought similar relief from Brister, Montgomery, and Gariepy in their individual capacities. In particular, Mederos alleged that Brister participated in the termination and implemented unconstitutional policies (i.e., a policy of having parish employees sign a receipt with, language stating that employment is at will when that is contraiy to the just cause language in the charter); that Montgomery participated in her termination and denied her a grievance; and that Gariepy authorized her termination.
Personal or individual liability suits seek to impose personal liability upon a government official for actions she takes under color of state law causing the deprivation of a constitutional right. Driscoll v. Stucker, 04-0589, p. 27 (La.1/19/05), 893 *37 So.2d 32, 52. Theories of vicarious liability and respondeat superior |indo not apply to an action brought under 42 U.S.C. § 1983. Devers v. Southern University, 97-0259, p. 12 (La.App. 1st Cir.4/8/98), 712 So.2d 199, 207.
The only constitutional right that Mede-ros alleged these defendants violated is her right to due process. However, as stated above, because Mederos was an at will employee, she did not have a property interest in her continued employment that is protected by procedural due process. Therefore, as with her claims against the Parish, Mederos likewise is unable to prove any claim of individual liability against Brister, Gariepy, or Montgomery in their individual capacities for alleged violations of her due process or Section 1983 rights.

Intentional Infliction of Emotional Distress

In order to recover for intentional infliction of emotional distress, a plaintiff must establish: (1) that the conduct of the defendant was extreme and outrageous; (2). that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991). The conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. White, 585 So.2d at 1209. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. White, 585 So.2d at 1209.
Liability also does not attach where the actor has done no more than to insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional distress. White, 585 So.2d at 1210. Thus, disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable. Recognition of a cause of action for intentional infliction of emotional Indistress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time. White, 585 So.2d at 1210.
In the instant case, Mederos initially- alleged claims for intentional infliction of emotional distress against Brister, Gariepy, and Montgomery. However, Mederos subsequently amended her petition to state a claim for intentional infliction of emotional distress solely against Montgomery. In her amended petition, Mederos asserted as a basis for her claim that: Montgomery asked Mederos’s coworkers how the environment was when Mederos was out on suspension; Montgomery assigned non-priority work to her; Montgomery delegated duties to Mederos without providing formal training; Montgomery micromanaged Mederos; and Montgomery contacted different departments while Mederos was out on vacation asking how Mederos handled things.
As pointed out by the defendants, none of these actions meet the aforementioned criteria discussed in White, as they are not so outrageous in character or so extreme in degree as to go beyond all possible bounds of decency, nor are they regarded as atrocious and utterly intolerable in a civilized society. White, 585 So.2d at 1209. Likewise, the actions relied on by Mederos in opposing the defendants’ motions for summary judgment, including her “suspension” by Montgomery when Montgomery had only been working for the Parish for a *38 few weeks, Montgomery’s chastising of Mederos for having lunch with an IRS auditor during a time when the Parish was being audited by the IRS, and Montgomery’s issuance to Mederos of a lengthy written reprimand with “unsubstantiated allegations,” fail to meet the standards set forth in White. This conduct represents nothing more than Montgomery insisting upon her legal rights as the Human Resources director and initiating disciplinary action, which is not regarded as actionable. See White, 585 So.2d at 1210.
| ^Furthermore, Mederos’s reliance on an email from her to Montgomery that Montgomery forwarded to a Parish employee on August 26, 2013, with the notation “just for kicks” and a September 24, 2013 email from Montgomery to another Parish employee regarding Mederos are also insufficient to establish a claim for intentional infliction of emotional distress, as both of these actions occurred after Mederos separated from employment with the Parish.[6]
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of St. Tammany Parish Government, Patricia Brister, Beverly Gariepy, and Leslie Montgomery and dismissing plaintiffs claims against them with prejudice. All costs of this appeal are to be borne by the plaintiff appellant, Sheryl Mederos.
AFFIRMED.

. At the time Ms. Mederos was hired by the Parish, it operated under a president-council form of government pursuant to a home rule charter adopted in 1979, The charter was subsequently'repealed by voters in late 1982. Thereafter, from 1984-1997, the Parish operated under a police jury system of government. Following the approval by voters in the Parish in 1997 of a home rule charter, the Parish began operating under the charter and a president-council form of government beginning in January 1998.

. The record contains an August 16, 2013 email from Montgomery to Mederos stating that per Mederos's request, she has processed her separation of employment as a resignation/retirement. Mederos confirmed her separation from the Parish as a retirement in an August 21, 2013 email to Montgomery.

. Louisiana Code of Civil Procedure article 966 was recently amended by 2015 La. Acts 422 § 1; however, the new version of article 966 does not apply to this case, as the amendment did not become effective until January 1, 2016, which results in the application of the prior version of article 966 to the instant matter.

. The defendants note in their motions for summary judgment that the motions focus solely on the dispositive legal issue of whether Mederos was an at will employee.

. We note that his language from the 1998 home rule charter is identical to language from the 1979 home rule charter, which was in effect on the date that Mederos began her employment with the Parish.

. We also note that to the extent Mederos asserts a claim for intentional infliction of emotional distress against Montgomery based upon her alleged "wrongful discharge,” the jurisprudence recognizes that such a claim by an at will employee cannot lie. See Stevenson v. Lavalco, Inc,, 28,020, pp. 3-4 (La.App. 2nd Cir.2/28/96), 669 So.2d 608, 611, writ denied, 96-0828 (La.5/17/96), 673 So.2d 611; Hammond v. Medical Arts Group, Inc., 574 So.2d 521, 525 (La.App. 3rd Cir.1991).