Judgment rendered January 15, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,135-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KERRY BLAKEMORE                                    Appellant

versus

TOWN OF GRAMBLING                                  Appellee

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 55,873

Honorable Bruce Edward Hampton, Judge

* * * * *

G. KARL BERNARD & ASSOCIATES, LLC        Counsel for Appellant
By: G. Karl Bernard

BREEDLOVE LAW FIRM                        Counsel for Appellee
By: Pamela N. Breedlove

* * * * *

Before MOORE, GARRETT, and COX, JJ.

**COX, J.**

Kerry Blakemore ("Blakemore") filed suit against the Town of Grambling ("Grambling") alleging wrongful termination against the Grambling Chief of Police and Mayor of Grambling. After five years of litigation, Grambling filed a motion for summary judgment. Blakemore did not file an opposing motion. On January 7, 2019, the 3rd Judicial District Court issued a ruling which granted Grambling's motion. Blakemore appeals. For the following reasons, we affirm the district court's decision.

## FACTS

On November 1, 2005, Blakemore accepted a position as a police officer for Grambling. In 2008, Blakemore briefly resigned from the Grambling Police Department and worked for the Morehouse Parish Sheriff's Department. He returned to Grambling later in 2008. According to his personnel file, Blakemore had numerous reprimands or memorandums that led to his dismissal. These reprimands or memorandums as listed in the personnel file are:

- On January 4, 2006, Blakemore was counseled on smoking in the patrol units.

- On January 9, 2006, Blakemore received his first written reprimand for not timely submitting his incident reports.

- On February 7, 2006, Blakemore was reprimanded for failing to follow the proper protocol regarding a theft. According to the written reprimand, Blakemore never advised his supervisor, failed to write a report, and never contacted the Ruston Police. Blakemore then submitted a report on the incident that failed to meet the Grambling Police standards for an incident report.

- On February 14, 2006, Blakemore was again counseled for smoking in the patrol unit. He was to receive a one-day suspension without pay.

- On February 20, 2006, Blakemore was reprimanded for failing to properly turn in a report. When confronted, Blakemore cursed and ignored the orders of a supervising officer. Blakemore received a two-day suspension without pay.

- On May 29, 2006, Blakemore received a written reprimand for failure to attend a mandatory training seminar. He was advised that failure to attend a makeup seminar could lead to his termination.

- On September 27, 2006, Blakemore received a write-up in his personnel file for failing to retrieve his Fuelman receipts and for using premium gas.

- On April 17, 2007, Blakemore was written up for leaving the fuel card and receipts in his patrol car instead of turning in the items to supervising officers.

- On March 1 and May 1, 2008, Blakemore received reprimands for failing to properly submit daily police logs. Blakemore also received another two-day suspension for his insubordination.

- On September 7, 2009, Blakemore was promoted to sergeant.

- On March 2, 2011, he received another reprimand for his failure to properly file an incident report. According to the memo, Blakemore failed to even pull a case name to write the report. In the memo, Chief of Police Tommy Clark stated that it "[was] very unprofessional for another agency to contact [him] over a serious incident in which

[Blakemore's] pure laziness and judgment caused the Sherriff's office to abandon the call in which they wrote a full report explaining why."

On November 21, 2011, Blakemore failed to call in to dispatch at any point during his shift. According to Chief Clark, this was something that should never occur. So, on the evening of November 22, when Blakemore was on duty with Officer Richard Otwell, Chief Clark decided to patrol Grambling in order to monitor Blakemore's activity. Chief Clark discovered Blakemore's patrol unit at his residence, and he was unable to locate Officer Otwell within the Town of Grambling. Chief Clark drove past Blakemore's residence three times that evening, and each time Blakemore's patrol vehicle was parked at his residence. Chief Clark recalled that frost had begun to accumulate on the car, indicating that it had been parked for an extended time. Chief Clark was unable to state exactly how long he believed Blakemore remained at his residence, but he noticed that a stalled vehicle was on the main highway and neither Blakemore nor Otwell had called in to dispatch to confirm that they had checked on the vehicle. At this point, Chief Clark attempted to check Blakemore's dispatch logs and daily police reports. Chief Clark was unable to do so because Blakemore had failed to produce an activity report for the prior two months. Chief Clark decided to write up both Officer Otwell and Blakemore individually.

In his meeting with Officer Otwell, Otwell acknowledged that he had become complacent with his work and needed to improve his effort. He also admitted to not patrolling the town on November 22, 2011. Otwell complained that it was hard to patrol the town by himself and that his daily logs would show that when paired with any other supervising officers, his work was satisfactory. When Chief Clark looked through the daily police

3

logs, he confirmed that Otwell was properly patrolling the town when paired with other officers.

On November 29, 2011, Chief Clark met with Blakemore and intended to give him a formal reprimand for his failure to properly patrol and produce daily police logs on November 22. Chief Clark planned to give him a two-day suspension without pay. However, when Chief Clark met with Blakemore on November 29, Blakemore refused to accept a copy of the formal reprimand and demanded an attorney be present. A predisciplinary hearing was scheduled. On December 6, 2011, Blakemore was placed on administrative leave pending a predisciplinary hearing. He received a letter on December 7 providing notice of the impending hearing.

On January 6, 2012, Grambling conducted a predisciplinary hearing regarding Blakemore. At the hearing, Daphne Mathis, the dispatcher on duty on November 21, 2011, testified first. In her testimony, she confirmed that Blakemore did not call in to dispatch for the entire shift. Additionally, Mathis stated that while officers do occasionally go home, they call in before going home and also call when they leave their home.

Next, Officer Otwell testified. In his testimony, he stated that he was working on November 21, 2011, with Sergeant Blakemore, but he did not see Blakemore patrolling the town during the shift. Officer Otwell said that when on shifts with other officers, he sees these officers patrolling or "running traffic." He agreed that he consistently saw less of Blakemore on shifts compared to other supervising officers with whom he had worked. Otwell confirmed that if one of the two officers on duty does not patrol the town, it places more work on the other officer and makes the shift more difficult.

4

Chief Clark then testified and confirmed that Blakemore failed to produce any daily police logs for the months of October and November. Additionally, when looking at the dispatch logs of the dispatcher during Blakemore's shifts, Chief Clark noticed they were much shorter than shifts of other officers. This indicated to Chief Clark that Blakemore was not patrolling the town while on duty or providing adequate backup to officers, because he was calling in incidents to dispatchers. Chief Clark also pointed out that Blakemore would issue far fewer citations than other officers, confirming that he was not patrolling the town. Chief Clark also testified that during Blakemore's suspension, he was supposed to report to be fitted for a bulletproof vest. Blakemore failed to attend the fitting. Chief Clark stated that he allows officers to go home briefly for bathroom breaks and even to occasionally eat a meal, but they are expected to not stay at their homes. Chief Clark characterized Blakemore's habits as a "dereliction of duty."

Finally, Blakemore testified. He claimed that he did not know how long would be an appropriate time to be at his home, he refused to provide a definition of backup, and argued over what would be considered quickly arriving at a crime scene. Blakemore admitted that he went to his house every day while he was on duty. He claimed that he would not be at home long, but refused to give a time limit as to how long he would stay. He said that typically he would eat and watch television, or do some of his daily officer reports, while at home. He also acknowledged that he would not always contact dispatch and inform them that he was going home. He also admitted he had not completed his daily police reports for the past two months. He believed that as a supervisor he was not required to do reports,

5

though he did agree that none of the other supervisors had advised him he was not required to write reports. He provided no explanation for what he was doing or how long he was at his home on November 22, 2011. Following the hearing, Chief Clark terminated Blakemore's employment.

Following his termination, Blakemore appealed to the Mayor of Grambling, Edward Jones, who reviewed the audiotapes of the hearing and all the documents that were reviewed during the investigation. Mayor Jones affirmed Chief Clark's decision terminating Blakemore's employment. Mayor Jones noted Blakemore's ineffectiveness as a supervising officer, unwillingness to write daily reports, his extended trips to his home during shifts, and not properly patrolling the town as reasons for termination.

On June 18, 2012, Blakemore filed a suit against Grambling. On April 8, 2013, Blakemore's initial counsel withdrew. On April 2, 2015, Blakemore's current counsel enrolled. Grambling filed a motion for summary judgment on August 27, 2018. Blakemore filed a motion to strike the defendant's motion. The district court denied the motion to strike and reset Grambling's motion for summary judgment hearing to give Blakemore the opportunity to file a proper opposition. Blakemore failed to file an opposition. On December 7, 2018, Blakemore requested to continue the hearing. The district court denied this, as he had waited until after the deadline to file an opposition. On January 9, 2019, the district court granted Grambling's motion for summary judgment. On March 22, 2019, Blakemore filed an appeal.

## DISCUSSION

Blakemore seeks review of the district court's grant of summary judgment. Blakemore claims that he was not an at-will employee. As such,

6

Grambling needed cause to fire him. He contends that there was insufficient evidence presented to terminate him for cause. He also argues that Blakemore was not provided with due process of law prior to and during his disciplinary proceedings pursuant to the Police Officer's Bill of Rights.

Grambling asserts that Blakemore was an at-will employee and was terminated for failing to perform the basic duties of his job. Grambling states that Blakemore was provided multiple notices regarding the complaints against him and could have explained his actions. Grambling claims that he was provided notice of the charges against him, he was provided a predisciplinary hearing, and was given an opportunity to appeal his termination to Mayor Jones. After reviewing the files, Mayor Jones affirmed Blakemore's termination. Grambling urges that Blakemore was provided all notices required by law.

A de novo standard of review is required when an appellate court considers rulings on summary judgment motions, and the appellate court must use the same criteria that governed the trial court's determination of whether summary judgment was appropriate. *Davis v. Heniff Transp., LLC*, 52,048 (La. App. 2 Cir. 5/23/18), 249 So. 3d 183. A court must grant a motion for summary judgment if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3).

A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially ensure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. *J&L Oil Co. v. KM Oil Co., LLC*, 51,898 (La. App. 2 Cir. 2/28/18), 247 So.

7

3d 147; *Barfield v. Diamond Constr. Inc.*, 51,291 (La. App. 2 Cir. 4/5/17), 271 So. 3d 1211, *writ denied*, 2017-0751 (La. 9/5/17), 228 So. 3d 1205. An issue is genuine if reasonable persons could disagree based on the evidence presented. *J&L Oil Co.*, *supra.*

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

*Plaintiff was an at-will Employee*

Under the Lawrason act, in a town with an elected chief of police, the mayor does not have the authority to supervise and direct the administration and operation of the police department. La. R.S. 33:404(A)(1). However, in towns and cities where the police chief is appointed by the mayor, the mayor is to be the ultimate authority in supervising and directing the administration and operation of the police department.

Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge. *Quebedeaux v. Dow Chemical Co.*, 2001-2297 (La. 6/21/02), 820 So. 2d 542; *Mederos v. St. Tammany Par. Govt.*, 2015-1602 (La. App. 1 Cir. 7/11/16), 199 So. 3d 30.

8

An at-will employee has no property interest in his or her employment.  *See Mederos*, *supra*.  Rather than creating a property interest, Louisiana law delegates to mayors the authority to fire an employee holding a position so long as he is not a civil servant and ordinances do not provide otherwise.  *Cabrol v. Town of Youngsville*, 106 F. 3d 101 (5th Cir. 1997).  The Lawrason Act says nothing about why employment may be terminated, but only specifies how employment may be terminated.  Any ordinance merely conditioning an employee's removal on compliance with certain specified procedures does not endow that employee with a property interest in his employment.  *Cobb v. City of Harahan*, 516 Fed. App'x 337 (5th Cir. 2013).

Internal personnel policies do not create contractual rights between parties.  *Square v. Hampton*, 2013-1680 (La. App. 4 Cir. 6/4/14) 144 So. 3d 88; *Williams v. Delta Haven, Inc.*, 416 So. 2d 637 (La. App. 2 Cir. 1982).  Employee manuals, as well as company policies and procedures, do not confer contractual rights upon employees nor create any exceptions to the employment at-will doctrine.  *Mix v. Univ. of New Orleans*, 609 So. 2d 958 (La. App. 4 Cir. 1992), *writ denied*, 612 So. 2d 83 (La. 1993); *See also Wall v. Tulane University*, 499 So. 2d 375 (La. App. 4 Cir 1986), *writ denied*, 500 So. 2d 427 (La. 1987); *Keller v. Sisters of the Incarnate Word*, 597 So. 2d 1113 (La. App. 2 Cir. 1992).  Employment at-will applies even to government employees who are not protected by civil service provisions as well as to private industry employees.  *Mederos, supra*; *Tolliver v. Concordia Waterworks Dist.*, 98-00449, (La. App. 3 Cir. 2/10/99) 735 So. 2d 680, *writ denied*, 99-1400 (La. 7/2/99), 747 So. 2d 23.

Blakemore first contends that he was not an at-will employee and as such he must be terminated with cause.  Blakemore does not directly argue

that a contract existed which created a fixed term of employment, or that he had a property interest in his employment. Instead, he argues that "The City of Grambling's Policy and Procedure Manual" precludes him from being considered an at-will employee. Additionally, Blakemore urges that the Police Officer's Bill of Rights requirement of an investigation before termination creates a burden not found in at-will employment. We find both of these arguments to be without merit.

It is well settled that an employee manual does not negate an employee's at-will status. In *Mix*, the Fourth Circuit held that a grievance procedure did not negate the fact that a University employee was an at-will employee. The court reasoned that Mix was an unclassified employee not protected by civil service law and was an at-will employee. Furthermore, in *Keller* this Court also held that an employment personnel manual was not an employment contract. There, we reasoned that a hospital's personnel manual did not establish a fixed term of employment which would have vitiated Keller's at-will employment. As such, she was an at-will employee.

Blakemore cites *Reyes-Silva v. Drillchem Drilling Sols., LLC*, 2010-1017 (La. App. 3 Cir. 2/2/11), 56 So. 3d 1173, *writ denied*, 2011-0732 (La. 5/20/11), 63 So. 3d 983, to support his argument that he was not an at-will employee. However, *Reyes* is distinguishable in that the plaintiff's employment agreement required just cause for termination in the first six months. In *Reyes*, the Third Circuit reasoned that although the contract did not guarantee employment for a fixed term past the initial six months, the fact that just cause was required for termination during the first six months comported closer to a fixed-term employment than at-will employment.

Here, Blakemore's employment did not have any conditional period with which his employment could be terminated for just cause. The "City of Grambling Policy and Procedure Manual" lists expectations of its employees and even lists reasons for termination, but it in no way states that the officers are not at-will employees. As stated earlier, Grambling is a Lawrason Act town. More specifically, Grambling is a Lawrason Act town in which the mayor appoints the chief of police. As such, the police officers are at-will employees and serve directly under the mayor. Officers under the Lawrason Act are not civil service employees and do not receive protections that civil service employees receive. The fact that Grambling has an employee manual with certain guidelines that an employee is supposed to meet does not negate this fact.

Blakemore next contends that the Police Officer's Bill of Rights does not support Grambling's assertion that he was an at-will employee. This is also meritless. We agree with the analysis of the Federal Courts that the Police Officer's Bill of Rights does not vitiate at-will employment. In *Madison v. City of Patterson*, 18-0175, 2018 WL 4624185, (W.D. La. 9/26/18), the court held that an officer in a Lawrason Act town was an at-will employee. Specifically, the court reasoned that the Police Officer's Bill of Rights did not provide the officer with a property interest in his job. The court also pointed to the fact that the officer did not have a contract for a definite term or that the employer agreed only to fire him for cause. Therefore, the officer was an at-will employee.

Here, the fact that Blakemore received the benefit of the Police Officer's Bill of Rights does not create the necessary property interest for an Officer to be considered a term employee. Blakemore was employed in a

11

Lawrason Act town and his employment was directly controlled by the mayor.  Blakemore did not have a contract, was not a termed worker, nor was it expressed to him that he could only be fired for cause.  Therefore, we find that no issue of material fact exists as to whether Blakemore was an at-will employee.

*Due Process and Police Officer Bill of Rights*

According to La. R.S. 40:2531, whenever a police employee or law enforcement officer is under investigation:

1) The police employee or law enforcement officer being investigated shall be informed, at the commencement of interrogation, of the nature of the investigation and the identity and authority of the person conducting such investigation, and at the commencement of any interrogation, such officer shall be informed as to the identity of all persons present during such interrogation. The police employee or law enforcement officer shall be allowed to make notes.

Additionally, the Officer being questioned must be given 30 days to secure representation, during which time all questioning shall be suspended.  La. R.S. 40:2531(B)(4)(b)(i).

As long as the termination does not violate any statutory or constitutional provisions, the employer is not liable.  *Jackson v. Mayo*, 42,970 (La. App. 2 Cir. 2/13/08), 975 So. 2d 815, *writ denied*, 2008-0553 (La. 4/25/08), 978 So. 2d 371; *Clark v. Acco Systems Inc.*, 39,532 (La. App. 2 Cir. 4/6/05), 899 So. 2d 783.  The at-will doctrine provides a shield to employers so significant that only a few instances provide exception to the protection.  *Jackson*, *supra*; *Clark*, *supra*.  In fact, even an employer's failure to follow a grievance procedure does not alter the essential nature of at-will employment.  *Jackson*, *supra*; *Keller*, *supra*.

12

Blakemore's next argument is that the predisciplinary hearing violated his due process rights because he was not given proper notice of the allegations before him. We also find this argument to be meritless.

It is worth noting once again that Blakemore was not a civil service employee. Since he was not a civil service employee, he was not entitled to the due process granted under La. Const. art. X, § 8, which states that "no person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing." However, under the Police Officer's Bill of Rights, Blakemore was entitled to an attorney at the investigation hearing and at the commencement of interrogation he was to be informed of the nature of the investigation. Blakemore cites *Knight v. Dep't of Police*, 619 So. 2d 1116 (La. App. 4 Cir. 1993), *writ denied*, 625 So. 2d 1058 (La. 1993) as an example of what is appropriate notice to an officer. In *Knight*, the Fourth Circuit stated that "R.S. 40:2531 does not require that the law enforcement officer know the exact charges that may be brought against him. All that is required is that the investigating agency inform the police officer 'of the nature of the investigation.'"

According to the record, on December 7, 2010, an officer from the Grambling Police Department hand delivered a letter outlining the investigation against Blakemore. The letter states that Blakemore is under investigation for abandoning his shift, going to his house, failing to patrol Grambling while on duty, failing to complete and turn in log sheets showing his actions on duty, and failing to report to scheduled meetings including fitting for new vests. Not only did Blakemore receive a copy, but the record

13

indicates that Blakemore's counsel received the letter. Therefore, Blakemore was properly notified of the investigation against him.

Blakemore was properly terminated based on the Police Officer's Bill of Rights and the "City of Grambling Policy and Procedure Manual." First, Blakemore received notice and had an attorney present at the predisciplinary hearing. Then, at the January 6 hearing, Daphne Mathis testified that Blakemore did not call in to dispatch at any point on November 21, 2011. Officer Otwell testified that he consistently saw less of Blakemore while on shifts than other supervising officers. Otwell acknowledged that Blakemore's inconsistent patrolling of the city made his job more difficult. Chief Clark testified Blakemore's inactivity on November 21 concerned him and he therefore patrolled the town the next day to monitor Blakemore. Chief Clark drove past Blakemore's house on three separate occasions and each time found Blakemore's police car parked in his front yard. Chief Clark stated that the vehicle had been there long enough for frost to accumulate on the windows. Chief Clark also stated that Blakemore had failed to turn in a daily log for two months and that the activity sheets of the officers that Blakemore supervised were much shorter, indicating that these officers were not properly monitoring the city. Blakemore also consistently wrote fewer tickets than other patrolling officers. After Chief Clark brought these incidents to Blakemore's attention and suspended him, Blakemore skipped a bulletproof vest fitting. Chief Clark characterized these incidents as a dereliction of duty.

Perhaps the most damaging evidence presented at the hearing was the testimony of Blakemore himself. He openly admitted to returning home daily and not notifying dispatch of his location. Additionally, Blakemore

14

could not remember the last time he wrote a ticket, and acknowledged that he was not turning in daily activity logs. "The City of Grambling's Policy and Procedure Manual" states that reporting defective work and insubordination are grounds for disciplinary action or termination. Blakemore's behavior falls into both of these categories and he was therefore terminated, after receiving notice of a disciplinary hearing, receiving a disciplinary hearing, and appealing directly to the mayor, thus meeting the requirements of La. R.S. 40:2531 and his employment manual. Therefore we find that no issue of material fact exists as to whether Grambling violated Blakemore's due process.

## CONCLUSION

For the reasons outlined above, we affirm the district court's judgment, which held that Blakemore was properly terminated. Costs associated with this appeal are assessed to the appellant.

**AFFIRMED.**

15